New Orleans, Baton Rouge, Vicksburg and Memphis Railroad Company *v.* E. S. Drake.

Eminent Domain. *Condemnation of land for railroad. Assessment by commissioners. Chancery jurisdiction. Constitutionality of charter.*

The charter of the N. O., B. R., V. & M. R. R. Co. (Acts 1882, p. 921), after granting to the company the right to take lands for its right of way and other specified purposes, then provides that in case the company and the owners of the land cannot agree as to the value thereof, the same "shall be determined by the approval of three disinterested commissioners, who may be appointed upon the application of either party to the Chancery Court of the county in which the land to be taken lies," etc.; and "either party feeling aggrieved at such appraisement may, within thirty days after the same has been returned into court file an appeal therefrom, and demand a jury of twelve men to estimate the damages sustained," etc. This provision is not unconstitutional in providing (1) for the appointment of three commissioners, in the first instance, to assess the value of the lands to be taken as provided; nor (2) in devolving upon the Chancery Court the power of appointing such commissioners.

Appeal from the Chancery Court of Claiborne County.

Hon. H. S. Van Eaton, Chancellor.

On the 20th of January, 1883, the New Orleans, Baton Rouge, Vicksburg & Memphis Railroad Company filed a petition in the Chancery Court, reciting that, in the construction of the company's road, it would be necessary to pass through and over a certain tract of land belonging to E. S. Drake, who could not agree with the petitioner as to the value of the land (one hundred feet in width), required in the construction of the road and asking for the appointment of three disinterested persons, as commissioners, to appraise the value of that part of the land necessary to be taken and used as a right of way, in

the construction of the petitioner's railroad.   Drake was summoned, and appeared, and opposed the granting of the petition.   After hearing argument on both sides, the court dismissed the petition, " upon the ground of the unconstitutionality of the provisions of the charter of said company in regard to condemnation of land for rights of way."

Sect. 2 of the company's charter (Acts 1882, p. 921), after authorizing the company to enter upon and take lands for the purposes and to the extent there specified in the construction of its road, then provides that, " in case the owners of such lands cannot agree with said company, as to the value of the premises taken or to be taken, for the use of said road, the value thereof shall be determined by the appraisal of three disinterested commissioners, who may be appointed upon the application of either party to the Chancery Court of the county in which the land to be taken lies ; and the said commissioners shall appraise, in their assessment of damages, such premises at what would have been the value thereof, had not the road been built ; and upon the return into court of such appraisement, and upon the payment into the same of the estimated value of the premises taken, for the use and benefit of the owner thereof, said premises shall be deemed to be taken by said company, which shall acquire full title to the same for the purposes aforesaid.   Either party feeling aggrieved at such an appraisement may, within thirty days after the same has been returned into court, file an appeal therefrom, and demand a jury of twelve men to estimate the damages sustained ; but such appeal shall not interfere with the right of said company to enter upon the premises taken, or to do any act necessary and proper in the construction of its road," etc.

*Vertner & Gage*, for the appellant.

1. As to the appointment of three commissioners instead of a jury of twelve : The constitutional provision, as to the inviolability of the right of trial by jury has frequently been invoked in proceedings like the present, as invalidating an

assessment of damages by a body of less than twelve men. But the weight of authority is against such proposition. The persons appointed to assess damages in cases like this do not perform the usual and proper functions of a jury, and their number is a matter of discretion with the Legislature. *Raleigh R. R.* v. *Davis*, 2 Dev. & B. 451 ; *Evansville R. R.* v. *Miller*, 30 Ind. 209 ; *Ames* v. *Lake Sup. R. R.*, 21 Minn. 241 ; *West River Bridge* v. *Dix*, 6 How. 507, per Woodbury, J. Juries are for the trial of issues of fact in civil and criminal proceedings in courts of justice, and are not necessarily required in the assessment of damages for land taken for public use. *Livingston* v. *Mayor of N. Y.*, 8 Wend. 85 ; *The People* v. *Smith*, 21 N. Y., 595 (overruling *Clark* v. *Utica*, 18 Barb. 451) ; *Beekman* v. *Saratoga R. R.*, 3 Paige, 45 ; *Willyard* v. *Hamilton*, 7 Ohio, 111 ; *Houston R.R.* v. *Milburn*, 34 Texas, 224. Such a proceeding is not an action at law and requires no jury. *Koppikus* v. *Coms.*, 16 Cal. 254. Moreever, it has been the practice in many of the States, both before and after the adoption of their first Constitutions, in exercising the right of eminent domain, to assess the damages by a body less than twelve ; which would indicate that the preservation of the right of trial by jury was to be confined to cases other than those of such condemnations, and is no more to be claimed in the latter than in equity cases. The proviso of the Constitution here invoked was merely to preserve the right of jury trial in *statu quo*. 3 Paige, 75 ; 2 Dall. 304 ; 35 N. H. 134 ; 11 N. H. 19 ; 19 Vt. 478 ; 25 Ind. 53 ; 81 Penn. 118.

2. As to lodging with the Chancery Court the duty and power of appointing the commissioners : In answer to this objection, which is based upon the idea that it is an unconstitutional grant of power to the Chancery Court, it ought to suffice to say, that in appointing said commissioners, and in its entire connection with the proceedings, the court would be exercising only a ministerial and executive,

and not a judicial function. The commissioners perform all the judicial functions required. *Mayor of Lexington* v. *Long*, 31 Mo. 373. But even were there any purely judicial function in the execution of the duties imposed by the sections of the statute in question upon the Chancery Court, still we should insist that there would be no violation of any constitutional provision. Being a court of equity jurisdiction, the argument has been advanced that the Legislature cannot confer jurisdiction over subjects which are not of that kind, nor upon the Circuit Courts jurisdiction over other than common-law subjects. The constitutional limitations upon these courts (sects. 14, 16, Art. VI., of Con. of Miss.) have been better named and regarded as provisions distributing the subjects of jurisdiction between the courts named. "From which it follows that the Legislature cannot abstract, from either, any subject over which cognizance has been conferred upon it by the constitution, and confer upon the other court jurisdiction thereover. It may not, for instance, take from the Chancery Courts a subject purely and exclusively equitable, and transfer it to the Circuit Court. But there is on the confines of these courts" (to use the precise and figurative language of a former chief justice of this honorable court) "a shadowy margin, like that which divides twilight from darkness, about which courts cannot pronounce with confidence, and which legitimately belongs to the domain of legislation." *Bank of Miss.* v. *Duncan*, 52 Miss. 746. See, also, *Farish* v. *The State*, 4 How. 174; *Warwick* v. *Richardson*, 7 How. 131. The authorities of other courts (where similar constitutional clauses conferring jurisdiction upon, and distributing the subjects thereof among, the several courts have been called in question), generally coincide with the construction adopted in the case of the *Bank of Mississippi* v. *Duncan*, 52 Miss.—. So that it may be regarded as well established that the constitutional clauses, decisive of the question at bar, are statutes of distribution parcelling out all the subjects of judicial cognizance

then existing.   Whenever, however, under the exigencies of an advancing civilization, new subjects for judicial action arise, falling outside of the pale of subjects known either at law or in equity, and necessarily without the brand of either jurisdiction upon them, then the statute, which creates the new causes of action, places them in the category of matters of law or equity, as the case may be, by the very act of fixing their forum, and, *ipso facto*, the waifs become as firmly fixed in the family of the Chancery or Circuit Court, as any other of its subjects of jurisdiction.

*No counsel* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

The Chancery Court refused to grant the petition and dismissed it, as the record shows, " upon the ground of the unconstitutionality of the provisions of the charter of said company in regard to condemnation of land for right of way ; " but we are not informed as to the views of the chancellor further than this general statement of the record shows, and have not been favored with the views of the appellee.   The only question presented by the petition is as to the appointment of three commissioners by the Chancery Court, and if the provision for this is unconstitutional it must be either because the commissioners could not be appointed at all, or could not be appointed by the Chancery Court.   Objection to the designation of three commissioners in the first instance must rest on the assumption that a jury should be appointed instead of commissioners to make the valuation.   We do not consider this objection valid.   Mill on Em. Dom. sect. 91, and cases cited.

The remaining question is, could the Legislature devolve on the Chancery Court the appointment of commissioners in such cases?

We see no valid objection to this.   The right of eminent domain is inherent in the State, which may commit the duty

of ascertaining the " due compensation " to which the owner is entitled to any of its courts. Conceding the right to trial by jury in such case, there is no constitutional objection to a jury in the Chancery Court for the trial of the appeal provided for by the charter of the appellant.

The proceeding to take private property for public use is not a "*matter*" embraced in terms by the Constitution in parcelling out the jurisdiction of the courts it created. It is a peculiar matter, exceptional in its character, and not an ordinary " *case* " or " *cause*," as these terms are employed by the Constitution in creating certain courts.

The Constitution, recognizing the right of the State to take private property for public use, imposes on its exercise the limitation that it must be " upon due compensation first being made to the owner thereof, in a manner to be provided by law," and leaves it to the Legislature to provide by law for the ascertainment of the due compensation required. In making provision for this, the Legislature may select the court on which to devolve the duty of determining what is due compensation to the owner. The proceeding is not an action at law, but an inquest by the authority of the State in the performance of a duty, and is under its control. The original *ad quod damnum* proceeding issued out of chancery at the instance of the sovereign, and was returnable into chancery. No reason exists against the provision of the charter of appellant requiring the inquest for determining what is due com pensation to the owner to be conducted by the Chancery Court. Mill on Em. Dom., sect. 84 ; *Garrison* v. *The City of New York*, 21 Wall. 196.

Decree reversed and proceeding remanded, with directions to the Chancery Court to appoint commissioners, as asked by the petition.