LOUISVILLE, NEW ORLEANS AND TEXAS RAILROAD COMPANY
*v.* J. M. RYAN ET AL.

1. RAILROAD COMPANY. *Right of way. Condemnation proceedings. Evidence of offers to purchase.*
   In a proceeding to recover damages against a railroad company for land taken and used by it as a right of way, evidence of offers made by third parties to purchase such land is not competent to show the value of the land.

2. SAME. *Condemnation of right of way. Value of land. Evidence of present value for prospective uses.*
   But in such case testimony that the land has a peculiar value for certain determinate purposes is admissible, even though it be not then used for any of such purposes, and no one intends at the time to so use it. If its adaptability

to such purposes, or any of them, give it a present value, the owner is entitled to that value.

3. RAILROAD COMPANY. *Condemnation proceedings. Chancery jurisdiction. Personal decree. Abandonment of land in this court. Supreme court practice.*
   A chancery court has no power to render a personal decree against a railroad company for damages awarded to a land owner in condemnation proceedings had before it for land appropriated by the company for its right of way, unless there be a special statutory provision authorizing such decree; and if that court, in the absence of statutory authority, render such personal decree, the railroad company may, upon appeal to this court, even after a decree of affirmance here, abandon the land in controversy, and obtain a reversal of the personal decree against it by motion or suggestion of error.

APPEAL from the Chancery Court of Warren County.

HON. WARREN COWAN, Chancellor.

John M. Ryan and others are the owners of a narrow strip of land extending along the banks of the Mississippi river, in the city of Vicksburg. The strip contains about six acres. In 1884 the Louisville, New Orleans and Texas Railroad Company built its road across and over this strip from north to south, and acquired title to about ten feet in width of the whole strip. Afterward the company desired forty feet more of the land in question. The opinion of the court in response to the suggestion of error sets out the state of the record on the question of possession. After repeated efforts the parties failed to agree as to the price to be paid for the land. Thereupon, in 1886, the owners of the land, Ryan and others, filed a bill in accordance with the provisions of the charter of the company to have the land condemned, and its value, and the damages sustained by them, assessed, the company having refused to institute condemnation proceedings. The Chancellor, upon an agreement of the parties, appointed three commissioners, who assessed the damages at five thousand dollars. From this the company appealed to the chancery court, and a jury was asked for.

On the trial Ryan in his own behalf testified as to various offers he had received to purchase the land over the objection of defendant, the railroad company. He further testified that the

land was peculiarly valuable as a mill-site, though no mill was then on it.

The jury found a verdict in favor of complainants and assessed the damages at five thousand dollars. Thereupon the Chancellor entered up a decree in favor of complainants against the defendant personally for the amount of the verdict, and ordered an execution to be issued if the same was not paid 'in thirty days. The defendant appealed to this court.

Section 2 of the charter under which defendant is operating contains the following :

" And in case the owners of such lands or premises cannot agree with the company as to the value of the premises taken or to be taken for the use of said road, the value thereof shall be determined by the appraisal of three disinterested commissioners, who may be appointed upon the application of either party to the chancery court of the county in which the land or premises to be taken lie ; and the said commissioners shall appraise, in their assessment of damages, such premises at what would have been the value thereof had not the road been built ; and upon the return into court of such appraisement, and upon the payment into the same of the estimated value of the premises taken, for the use and benefit of the owners thereof, said premises shall be deemed to be taken by said company, which shall acquire full title to the same for the purposes aforesaid ; either party feeling aggrieved at such an appraisement may, within thirty days after the same has been returned into court, file an appeal therefrom, and demand a jury of twelve men to estimate the damages sustained ; but such appeal shall not interfere with the right of said company to enter upon the premises taken, or to do any act necessary and proper in the construction of its road ; and the party appealing shall give bond, with sufficient security, for the payment of costs that may arise from said appeal, and in case the party appealing does not obtain a verdict increasing or diminishing, as the case may be, the award of the commissioners, such party shall pay the whole cost incurred by the appellee, as well as his own, and the payment into court, for the use of the owner of the premises taken, of a sum equal to that

finally awarded, shall be held to vest in said company the title of said land, and the right to use and occupy the same for the construction, maintenance, and operation of said road."

*Murray F. Smith,* for the appellant.

1. The court erred in allowing the evidence as to offers made by land-owners.

"A witness was called by petitioner against the objection of respondents, and was permitted to testify that he had been offered one dollar per foot for the land. This we think was inadmissible. The witness may have had special reasons for making the offer." *Dickenson et al.* v. *The City of Fitchburg,* 13 Gray 554.

"We can find no case nor can we recall any principle that would permit the proof of an offer for property as tending to show its value. It is a kind of proof that is so easily manufactured that its admission would be too dangerous to be tolerated. For the error in admitting this the case must be reversed." *St. J. & Denver City R. R. Co.* v. *Orr,* 8 Kan. 419.

"But while the opinions of witnesses thus qualified by their knowledge of the subject are competent testimony, they cannot upon direct examination be allowed to testify as to particular transactions, such as sales of adjoining lands, how much has been offered and refused for adjoining lands or for the lands in question. If this were allowed, the other side would have a right to controvert each transaction instanced by witnesses, and to investigate its merits and render the investigation interminable." 35 Cal. 262; Rorer on Railroads 850, n. 6; Pierce on Railroads 225; *Watson* v. *Wil. R. R.,* 10 Am. & Eng. Ry. Cases 181.

2. The court erred in admitting the testimony of Ryan as to the damage done the land as a saw-mill site.

It will be noticed that there is no testimony to show that there is any demand for saw-mill sites in the neighborhood of this land.

That there is no testimony to show there is any saw-mill business transacted near this land other than that of John M. Ryan himself. He has never used this land for his own mill, and yet he goes on to show how and in what way the land was damaged as a mill-site, just as if a saw-mill was already located there.

With equal propriety it might be shown that it might be damaged as a cotton-mill site, as a glass-factory site, as the site for the location of a female college, or any other building, even though no prospects are shown that there is or was any demand for any of these purposes. Such damages are too remote and uncertain, too speculative, to be considered as any sort of a criterion to guide a jury by.

It is perfectly manifest that the witness Ryan was governed in his testimony by the fact that he and his brother had purchased the land to locate a mill upon. In his vivid imagination he pictures large and flourishing saw-mills already in operation, when along comes the railroad company and compels him at a great expense to build a fifty-foot span over its track to enable him to get his imaginary logs out of the river, and to send his imaginary lumber from his imaginary mill to his imaginary steamboats, that then are loading up at his imaginary landing. *Fairbanks* v. *Fitchburg*, 110 Mass. It may never be so fitted up, may never be so used. The risks and inconveniences depending upon these contingencies are too remote to be allowed as elements of damage. *Fleming* v. *Chicago D. & M. Ry. Co.*, 34 Iowa 358 ; see also *Scott* v. *I. & V. Railroad Co.*, 10 Am. & Eng. Cases 1899 ; *C. C. R. R. Co.* v. *Parson*, 35 Cal. 263.

*McCabe & Anderson*, for the appellees.

1. We fail to see any good reason why an offer made in good faith should not be given in evidence. We are aware that some of the cases hold that offers are not admissible, etc. We have looked into the cases for the reason of those courts who so hold, and they put the inadmissibility of such evidence on the ground that it is " easily manufactured." For the reason assigned no evidence would be admissible in any case. Evidence is about the easiest thing manufactured known to the law. It is no trouble for the plaintiff or the defendant to manufacture as much as they want ; the trouble generally is in getting it " to go down." We see no particular good sense or reason in these views. In trials of these kinds the question and inquiry always is what is the market value of the land taken and appropriated or sought to be condemned to

the use of another. When the land-owner undertakes to show what his land is worth in the market if his estimate is disputed he certainly ought to be permitted to show what he has been offered for it. That certainly is the fair market value of it, or rather evidence of the fair market value of it. My land is certainly worth what I can sell it for. Its market value is what I can sell it for. The decisions are not good law or good sense that hold to the contrary.

2. It was proper for the court to admit the testimony as to the availability of the land in question for a mill-site. The authorities cited below render further comment unnecessary. *McCloskey* v. *Pittsburg and Bradford R. R.*, 1 Central Rep. 619 ; *Balfour* v. *L. N. O. & T. Ry.*, 62 Miss. 509 ; *Commissioners* v. *Harkleroads*, 62 Miss. 807 ; *Reisner* v. *Union Depot Co.*, 27 Kan. 382 ; *Sheldon* v. *Minneapolis & St. L. R. R.*, 29 Minn. 318 ; *Mississippi River Bridge Co.* v. *Ring*, 58 Mo. 491 ; *Cincinnati and Springfield R. R. Co.* v. *Longworth*, 30 St. 108 (1876); *Fremont, Elkhorn and Missouri Val. R. R. Co.* v. *Whalen*, 11 Neb. 585 ; *Sherman* v. *The Minneapolis and St. Paul R. R.*, 30 Minn. 227 ; 10 Am. & Eng. Railroad Cases 193 ; *St. Louis and Arkansas R. R.* v. *Anderson*, 39 Ark. 167 ; *Haslem* v. *Galena and Southern Wisconsin R. R. Co.*, 64 Ill. 353 ; Lacey's Railway Digest, vol. 1, p. 219, § 378 ; New England Reporter, vol. 2, p. 278, case in point; *Boom* v. *Patterson*, 8 Otto 403 ; 3 Southerland on Damages 441 ; *Isom* v. *Miss. Cent. R. R. Co.*, 7 Geo. 313.

COOPER, C. J., delivered the opinion of the court.

The court erred in permitting evidence of offers which had been made for lands, for which compensation is sought. It is not competent to prove value by such evidence. Pierce on Railroads 202 ; 1 Rorer on Railroads 379, n. 1.

But since it is abundantly shown, not only by the evidence for the plaintiffs, but also by that of the defendant, that the injury done is fully equal to the damages awarded, the verdict ought not to be disturbed. No witnesses examined put the damages at less than the sum awarded.

The criticism made by counsel for appellant that the court permitted the plaintiffs to prove the speculative value of the property is not a just one. The witnesses all testify that the property has a certain, determinate value. Now, what causes that value is evidently the uses to which it may be put by the owner. It is a long, narrow strip of land fronting on a navigable stream, where the commerce of a city enters and is discharged. Clearly it is of insignificant value for agricultural purposes, and there is neither a wharf, a factory, or a saw-mill on it, and there may never be. But if its adaptability to these purposes or any one of them give it a present value, the owner is entitled to that value, though in fact no one now proposes to use it for any of these purposes. The suggestion of the appellant that the land might never be devoted to any of the uses to which its situation and character adapt it is far more improbable than that it will be done.

*The decree is affirmed.*

After the foregoing opinion was delivered counsel for the appellant made a motion or suggestion of error in the following words :

" The appellant herein moves the court that it be allowed to abandon all claim in or to the forty feet of ground in controversy in this case or to any easement in the same, which it now here offers to do, and that the court by its decree here will direct the court below to so modify its decree as to change it from an absolute decree against appellant for five thousand dollars, and an award of execution thereon to a decree fixing or ascertaining the award of the jury, or such other and different modification as to this court may seem proper, which will relieve appellant from said judgment and execution thereon."

*W. A. Percy,* for the appellant.

1. Error in the judgment rendered by the court is suggested in this. That it affirmed the decree of the court below as to that part of said decree entering judgment against the railway company for five thousand dollars and awarding execution.

This action of the court below was one of the grounds of error

assigned. The chancery court had no power to enter a decree for the money and award execution. This is not a case in equity. It is a purely statutory proceeding, and the powers of the court are limited by the statute. *N. O. R. R. Co.* v. *Doake,* 60 Miss. 621. What are the statutory powers of the Chancellor? They are defined in the charter of the N. O., B. R., V. & M. R. R. Co., Acts of 1882, p. 921, § 2.

The whole thing is a matter of statutory regulation, and it will be found that wherever the court enters judgment and awards execution it is authorized to do so by the special statute under which the proceedings are instituted. Such was the law in the N. H. case, 51 N. H. Rep. 188.

2. But has the company at this stage of the proceedings the right to abandon its claim to appropriate the forty feet and decline to pay the five thousand dollars? If it has, then the decree awarding execution is erroneous, for the reason that it deprives the company of that right. In considering this question it is important to ascertain the attitude of the parties. The record does not show that the company was in possession of the land condemned. If it shows anything on this point, it is that the company was not in possession.

In considering the right of abandonment, the possession by the railroad company is not an element to be weighed.

The general principle on this subject is that the land-owner only has a vested right to the award when the title to the land is vested in the company. Mills on Em. Dom., § 311; 2 Dillon on Mun. Corporations, §§ 609, 610.

The Maryland case, cited in Dillon, *supra,* is strongly illustrative of the position assumed. In that case the statute provided that when the "valuation was paid or tendered title should vest," almost the identical language of the charter under which these proceedings were instituted.

Under the constitutions and laws of many of the States the title to the land vests in the company before either tender or payment. But the general principle underlying this whole question of abandonment is one of mutuality. When under the statute or the con-

stitution the rights of the parties are mutually determined so as to vest title in the company and a right to the money in the land-owner, then the right of abandonment is lost, but not until then. 27 Vt. Rep. 39.

Under our constitution this vesting of title can only take place upon tender or payment of the award. *Williams* v. *New Orleans, etc., R. R. Co.,* 60 Miss. 689. It would seem that this case ought to be decisive of the question. See 23 Am. & Eng. R. R. Cases 115; 10 Am. & Eng. R. R. Cases 105; 6 W. Va. Rep. 220; 10 How. U. S. Sup. Rep. 395; 20 Iowa 523; 13 Kansas 496; 17 Kansas 239.

*McCabe & Anderson,* for the appellees.

1. The answer to the position of appellant is plain and simple. The *proceeding* is not statutory at all. The *jurisdiction* is statutory, but the proceeding is not. The constitution in parceling out juris-diction to the different courts overlooked this matter of "eminent domain." As a result this was left to be disposed of by the leg-islature. The legislature has seen fit in cases like the present to bestow jurisdiction upon the chancery courts. When bestowed the court becomes possessed of full jurisdiction to perfect in detail the appropriation sought, and to declare and enforce the rights of all the parties according to its recognized and established rules of procedure. The old axiom that when the court of chancery once takes jurisdiction, it takes it for all purposes and can do complete justice, applies here in all its force.

2. But it is hardly necessary for us to reason further from the statute and general principles applicable to courts of chancery. The courts have completely traversed this ground and have held the right to enter judgment and award execution to exist. In a late case decided by the Supreme Court of Nebraska, 17 Neb. 692, it has been held that this is the proper remedy, viz.: "to give judg-ment on the verdict and award execution thereon." In the case of *Williams* v. *N. O., etc., R. R. Co.,* 60 Miss. 708, at the close of the opinion it is said "when the decree shall have been rendered a reasonable time should be allowed to pay the money decreed, and the cause should be retained until the same is so paid, so that its

payment may be *enforced by execution,* or, if necessary, by injunction restraining defendants from running their trains over complainant's land until the decree is complied with." In the charter of that railway company there is no *expressed* authority for this execution or injunction, but the right to the use of either remedy is held nevertheless to exist. Other authorities might be cited but these are deemed sufficient. Undoubtedly the power to give judgment and award execution exists in a proper case. What, then, is a proper case is the question.

We hold the following to be proper cases :

1. "Where, as here, the company appeals without paying the award money into court.

2. "Where, as here, the company is in the possession of the premises when the suit is brought.

3. "Where, as here, the company is by its conduct estopped from abandoning the land."

Upon each of the foregoing points our right to the execution is conclusive.

COOPER, C. J., delivered the opinion of the court on the suggestion of error filed by the appellant.

On the original submission of this case the point was made that the chancery court erred in rendering a personal decree against the appellant for the damages awarded by the jury. But as the record disclosed the fact that appellant was in possession of the land and that it was necessary for it to retain such possession for the purposes of its business, we were disinclined to disturb the decree. The appellant now suggests to the court that as a matter of fact it is not in the actual possession of the property and offers to abandon all claim to it by reason of the condemnation proceeding, and again contends that the chancery court had no power to award a personal decree against it. We have given to the subject a careful consideration and are constrained to agree with the appellant on the question presented. The charter of the company, while it confers upon either party the right of appeal to a jury in the chancery court from the verdict of the jury of inquest of

damages, makes no provision for the rendition of personal decree, presumably for the reason that it was contemplated by the legislature that condemnation proceedings would be resorted to by the company or the land-owner before an actual entry on the land, and because in such cases the company could not enter until payment of the award should first be made. We have examined the cases cited by counsel for the appellee and many others but have found that in most of them the rights of the parties at a certain stage of the proceeding were fixed and determined by the statute under which relief was sought. Such are the cases in New York, Pennsylvania, New Hampshire—in fact, we have found but one decision in which the position taken by appellee, that the award of damages fixed the right of the land-owner to the sum awarded and gave power to the court to enter a personal decree in the absence of a provision in that respect by the statute, is sustained. In 15 Neb. this view is maintained, but this case is, we think, in conflict with the decided weight of authority.

Unless by the statute the right of the land-owner is to be considered as fixed by some step in the proceedings, it seems that the right of abandonment must exist, especially in States whose constitutions provide, as ours does, that the compensation must be " first paid " before title can be acquired by the party claiming the right of eminent domain. Mills on Eminent Domain, § 311 ; *Denver* v. *R. R. Co.*, 23 Am. & Eng. Railroad Cases 121, and authorities cited in note.

In *Williams* v. *R. R. Co.*, 60 Miss. 689, the land-owner sought the aid of a court of equity to enforce payment of the damages awarded for lands into the possession of which the company had entered, a portion of the tract condemned having continued in the uninterrupted possession of the complainant. The contention in that case was made by the company that it had acquired title by adverse possession. This was determined against the railroad and the cause was remanded in order that the court might grant relief to the complainant either by enjoining the continued use of the property or by awarding execution if the company should continue in the use of the property. The point now made was not urged

in that case, and the attention of the court was directed only to the real controversy between the parties.

We are of opinion that the appellant may now elect to abandon the property described in the petition, and that the land-owner must resort to his action of trespass to recover for any injury that he has suffered by reason of the unlawful entry. So much, therefore, of the decree as awards a personal judgment against the company must be reversed, and since the appellant now abandons all claim to the property no further steps need be taken in the case. The costs both of this court and of the court below must be paid by the appellant.