EPPERSON v. JOHNSON, District Judge.

No. 30593. Nov. 12, 1941.

Rehearing Denied Dec. 2, 1941.

119 P. 2d 818.

R. A. Wilkerson and Harve N. Langley, both of Pryor, and Carey Caldwell and J. W. Bashore, both of Vinita, for petitioner.

Q. B. Boydstun and Jesse L. Ballard, both of Vinita, for respondent.

OSBORN, J. This is an original proceeding instituted in this court by Ludie Epperson, hereinafter referred to as petitioner, wherein she seeks to prohibit the district court of Mayes county and the judge thereof from ruling upon a motion filed by the condemnor in a condemnation proceeding pending in said court, said motion being one for abandonment and dismissal of the condemnation proceeding and an election on the part of the condemnor not to take or pay for the property involved in said proceeding.

The condemnation proceeding was instituted by the Grand River Dam Authority, which is a public corporation organized under the provisions of article 4, ch. 70, Session Laws 1935. The Authority was authorized to store and preserve the waters of Grand river and its tributaries for the purpose of developing water power and generating electric energy and for other purposes. It was expressly authorized to acquire real property by condemnation. The proceeding in the district court of Mayes county was for the purpose of condemning certain vacant and unimproved lots located within the platted area of the townsite of Disney in Mayes county, which property was owned by the petitioner. After due notice, commissioners were appointed to assess the compensation to the owner. On April 30, 1940, the commissioners filed their report, in which they fixed the amount of compensation at $10. On May 4, 1940, petitioner filed a written demand for trial by jury. On May 20, 1940, the condemnor paid the amount of said award into the office of the court clerk of Mayes county. It is shown that the condemnor has never taken possession of the property nor disturbed the proprietary rights of the petitioner to said property. The cause

was tried to a jury, and on March 25, 1941, the verdict of the jury was returned fixing the amount of compensation to be awarded at $4,000. On March 28, 1941, the condemnor filed a motion for new trial. One of the grounds upon which new trial was sought was that the verdict of the jury was excessive. On the same date condemnor filed a motion to dismiss and abandon the condemnation proceedings, and therein announced and declared its unwillingness to take the property and pay the amount of compensation awarded by the jury. The motion for new trial and the motion for abandonment and dismissal were heard by the trial court and the motion for new trial was overruled, but the trial court passed the motion for abandonment to a future date and allowed this petitioner 30 days in which to file a brief thereon. On September 24, 1941, after consideration of the briefs, the trial court indicated that the condemnor's motion for abandonment of the condemnation proceeding would be sustained and designated October 15, 1941, as the date upon which an order to that effect would be entered, whereupon this proceeding was instituted.

The proposition upon which the principal portion of the argument is predicated is stated in the brief of respondent as follows:

"Unless and until title to the property passed and the rights of the respective parties became vested, the condemnor to the land and the condemnee to the compensation, the condemnor could rightfully dismiss and abandon the condemnation proceeding."

It is conceded that the exact question is new in this jurisdiction, but it appears that similar questions have been before the courts of various jurisdictions. Great divergence of viewpoint is disclosed in the opinions dealing with the proposition, but there is also considerable dissimilarity in the statutes construed in the various opinions, which accounts in the main for the difference in the conclusions reached by the courts in the various cases.

A comprehensive annotation dealing with the question is found in 121 A.L.R. 12, et seq. At page 16 appears the following note:

"While the right to abandon condemnation proceedings may be relinquished by agreement or lost by estoppel, the general rule that in the absence of a statute fixing the time within which a discontinuance may be had, an eminent domain proceeding may be discontinued at any time before the rights of the parties have become reciprocally vested, is unquestioned."

At page 31 appears the following note:

"In the absence of statutory provisions expressly regulating the stage at which the condemning party may dismiss or abandon condemnation proceedings, and where the acts authorizing such proceedings do not contemplate the passing of title before confirmation or judgment, it is generally held that the proceedings may be dismissed prior to confirmation or judgment, although (there) an award or verdict has been returned."

It appears that it will be necessary to examine our constitutional and statutory provisions relating to the exercise of the right of eminent domain insofar as they are applicable to the question presented. Section 24, art, 2, of the Constitution provides that private property shall not be taken or damaged for public use without just compensation, and that such compensation must be ascertained by a board of commissioners appointed by the judge after reasonable notice to the parties in interest; that any party aggrieved shall have the right of appeal and trial by jury; that until compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner divested, and when possession is taken of property condemned for public use the owner shall be entitled to the immediate receipt of the compensation awarded without prejudice to the right of either party to prosecute further proceedings for the determination of the sufficiency of such compensation.

It is conceded that sections 11931-11933, O. S. 1931, 66 Okla. St. Ann. §§

53-55, provide the applicable procedure. The provisions of section 11931, supra, are in harmony with the constitutional provisions above outlined and provide for the appointment of commissioners, assessment of damages by them and a return of their report to the court, and that payment of the award made must be made to the clerk of the court, for the use of the owner, before entry upon the property.

Section 11932, supra, provides that when possession is taken, the owner is entitled to immediate receipt of the compensation awarded without prejudice to the right of either party to prosecute further proceedings for the determination of the sufficiency of said compensation.

Section 11933, supra, provides for a review of the report of the commissioners by the district court within 60 days after the filing of such report and that either party may, within 30 days after the filing of the report, file a written demand for a trial by jury; "in which case the amount of damages shall be assessed by a jury, and the trial shall be conducted and judgment entered in the same manner as civil actions in the district court."

Section 11934, O. S. 1931, provides for an appeal from the decision of the district court to the Supreme Court.

Section 11935, O. S. 1931, provides that the provisions of the article apply to all corporations having the right to eminent domain and to the State of Oklahoma, its departments and institutions.

The petitioner places considerable stress upon the case of Stewart v. Marland Pipe Line Co., 132 Kan. 725, 297 P. 708, opinion dated April 11, 1931. In that case the Pipe Line Company instituted condemnation proceedings upon certain property in Sedgwick county for use as a right of way for its pipe line. The property was duly appraised; two landowners appealed to the district court from the award; trials were had in the district court and judgment for the landowners for a much larger amount than the appraisement was entered in each case. After the verdict of the jury had been returned, personal judgment was entered against the company in each case and the company then signified its intention to abandon the condemnation proceeding and executed quitclaim deeds to the landowners for the right of way which had been condemned. The trial court denied the pipe line company the right to abandon, from which ruling the company prosecuted an appeal. The court held that the company did not have the right to abandon the proceedings, Its ruling was predicated upon a statutory provision providing that when the condemnor deposited with the clerk of the district court the total amount of the appraisement, the court costs and the fees of the appraisers, the "title to all such lots and parcels of ground thereupon shall immediately vest in the petitioners. . . ." The court held, in effect, that the title passed when such payment was made and that thereafter there was nothing involved in the proceeding except a determination of the amount of compensation to be paid to the landowner.

The respondent refers to another Kansas case, that of Todd v. Atchison, T. & S. F. Ry. Co., 134 Kan. 459, 7 P.2d 79, opinion dated January 30, 1932. In that case the railway company instituted condemnation proceedings against certain lands; commissioners were appointed and appraised the property at $50.414. An appeal was taken by the landowner to the district court and the jury appraised the property at the sum of $145,000, and the railway company gave notice that it had elected to abandon the condemnation proceedings, whereupon an action was brought against the company seeking payment of the award made by the jury on the theory that the railway company had no right to abandon the proceeding after the award by the jury. The following comment of the court is pertinent to the proposition presented here:

"There is no contention here as to the right of the railway company to exercise the right of eminent domain, or that the

land involved here was not subject to appropriation for railway uses. No claim is made that the railway company may not abandon a condemnation proceeding in its early stages; but it is insisted that, after it has proceeded to a trial by the court, there can be no abandonment. It is well settled that the proceeding is not a civil action at law or a suit in equity, but is a special statutory proceeding for the purpose of ascertaining the compensation to be paid for the property proposed to be appropriated, to be carried out in accordance with the methods provided by the Legislature for the condemnation. From the beginning it has been recognized that the proceeding is a special statutory one to be accomplished in a way prescribed in the condemnation act. When the proper preliminary steps are taken and the right to condemn is not questioned, the inquiry is confined to the question, What compensation is to be allowed for the property proposed to be taken? The inquiry is not an ordinary lawsuit, nor is the result comparable to a judgment in a common-law action. It is an award and not a judgment enforceable by execution, and, even upon an appeal to the district court from an award of commissioners, the finding of the jury in the district court is no more than an award, and has not the effect and finality of a judgment. It has been held in such a quasi-judicial proceeding, a personal judgment against the party condemning cannot be rendered. St. L., L. & D. Ry. Co. v. Wilder, 17 Kan. 239. In that case, it was said: 'The judgment does not pass the title to the land, nor to the right of way. It simply determines the amount which the railway company shall pay to the owner or owners of the land, or to the county treasurer for their use, in order to secure the right of way. . . . After the judgment is rendered in a case of this kind, then the railroad company may take the land, or not, at its option. (Blackshire v. The A. T. & S. F. Rld. Co., 13 Kan. 515.) But until it pays for the land it gets no title. And if it does not pay for the land within the time prescribed by law, it may be ejected from the premises, provided of course that it has taken possession thereof. (St. Jo. & D. C. Rld. Co. v. Callender, 13 Kan. 496.) An owner of land would not want to take a judgment against an irresponsible and insolvent railroad company as payment for his land; nor would a railroad company want to pay an enormously excessive award of damages for its right of way. Therefore it is right that each should have some choice in the matter.' See, also, Railroad Company v. Kuhn, 38 Kan. 104, 16 P. 75; Railroad Co. v. Kennedy, 49 Kan. 19, 30 P. 126.

"In an appeal to the district court, the question there is the same as was submitted to the commissioners; namely, What will be just compensation for the land in case it is condemned for public use? As stated in Railroad Co. v. Wilder, supra, a condemnation is not completed nor the rights of the parties settled until the inchoate proceeding is completed and there is an actual taking of the land; and, even after the proceeding is complete and the compensation fixed, the railroad company may then take the land or not at its option. . . ."

It is noted that the decision in the last-cited case is contrary to the former Kansas decision, but section 26-101, Gen. Stats. of Kan. 1935, to which we have previously referred, which provided that title should immediately vest upon payment into court of the award of the commissioners, specifically excepts from its provisions "railroad and interurban railway companies." Thus there is no such statutory provision involved in the case of condemnation of private property by a railway company.

In the case of Leonard v. Small (Tex. Civ. App.) 28 S. W. 2d 826, it was shown that the city of Ft. Worth had filed a condemnation proceeding upon certain property to be used as a public park for the city. Commissioners were appointed and fixed the assessment of damages in the sum of $31,500. The issues were then tried to a jury and the cash market value of the property and the assessment of damages was fixed at $81,000, whereupon the city filed a motion to discontinue and dismiss the case and abandon further proceedings. The trial court sustained the motion to dismiss the proceeding and the landowners appealed. We quote from the body of the opinion as follows:

"Lewis on Eminent Domain says, in section 955: 'The weight of authority

undoubtedly is that, in the absence of statutory provisions on the question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought, and that even after confirmation or judgment the purpose of taking the property may be abandoned without incurring any liability to pay the damages awarded. Beasley, Chief Justice of the Court of Errors and Appeals of New Jersey (O'Neill v. Freeholders of Hudson County, 41 N. J. Law, 161, 172, 173), referring to the principle of a previous decision (Matter of Water Commissioners of Jersey City, 31 N. J. Law, 72, 86 Am. Dec. 199), says: "That principle in substance was this: that whenever land is sought to be taken for a public purpose, the public authorities, in the absence of any statutory provision to the contrary, have a reasonable time given them, after the ascertainment of the expense of the scheme, to decide whether to accept or refuse the land at the price fixed. On every account that rule commends itself to my judgment. With respect to the landowner, the procedure is fair and just; it calls for a reasonable valuation of his land, and if the public reject it, at such estimation, he suffers, in general, no detriment; and, if in any exceptional case, any injury is done to him, he is entitled to reparation. On the other side, the rule in question is a necessity in view of the rational conduct of public affairs; the question whether a projected improvement is wise or unwise, expedient or inexpedient, cannot be answered by anyone who is ignorant of the expense that it involves, and therefore to require public agents, in handling these matters, to disregard this plain dictate of common sense would be altogether absurd. A man of prudence relinquishes a project when he finds the cost is likely to exceed, in a large measure, its benefit; it would seem intolerably unreasonable to require the agent of the public to pursue the opposite course. In construing any statute authorizing one of these undertakings, every reasonable intendment should be against reading it in a sense that would put the public in this false position. The legal effect of such acts should be held to be that they compel the landowner to offer the public the required land at the ascertained price,

and that when such price has been finally ascertained, the public has a reasonable time within which to make an election either to accept or reject the offer." Similar reasoning will be found in other cases cited. But while the condemnor may abandon the purpose of taking the property it cannot avoid the effect of the award or judgment if it desires to acquire the same. It has been held that the right to abandon is not affected by the fact that the petitioner has taken possession, pending proceedings, under a statute which provided that it might do so upon depositing a sum to be ascertained by the judge of the court in which the proceedings are pending.'

"In the case of District of Columbia v. Hess, 35 App. D. C. 38, 28 L.R.A. (N.S.) 91, Justice Robb says: 'Accordingly it is a rule of almost universal application that, in the absence of any statutory provision showing a legislative intent to the contrary, condemnation proceedings may be discontinued by the condemning party at any time before the right of the property owner has become complete. Manion v. Louisville, St. L. & T. R. Co., 90 Ky. 491, 14 S. W. 532; Simpson v. Kansas City, 111 Mo. 237, 20 S. W. 38; O'Neill v. Hudson County, 41 N. J. Law, 161; Nichols, Em. Dom., secs. 337, 338.' "

Other authorities cited by the Texas court are: Elliott on Roads and Streets, sec. 307; Dillon on Municipal Corporations, sec. 1044, vol. 3, p. 1151; McQuillin on Municipal Corporations, sec. 1504, p. 3146; Owen v. United States (C.C.A.) 8 F. 2d 992; Kanakanui v. U. S. (C.C.A.) 244 F. 923, 924; Mason City & Ft. D. R. Co. v. Boynton, 158 F. 599, 600; Denver & N. O. Ry. Co. v. Lamborn, 8 Colo. 380, 8 P. 582; Louisville, N. O. & T. Ry. Co. v. Ryan, 64 Miss. 399, 8 So. 174; Drath v. Railroad Co., 15 Neb. 367, 18 N. W. 717; Stevens v. Borough of Danbury, 53 Conn. 9, 22 A. 1071, 1072; Fairmont, etc., Ry. Co. v. Bethke, 37 S. D. 446, 159 N. W. 56; Park District of the City of Enderlin v. Zech, 56 N. D. 431, 218 N.W. 18; Pitsnogle v. Western Maryland Ry. Co., 123 Md. 667, 91 A. 831, Ann. Cas. 1916B, 1171; Griffeth v. Drainage Dist. No. 41 in Pocahontas County, 182 Iowa, 1291,

166 N. W. 570; State ex rel. Struntz v. Spokane County, 85 Wash. 187, 147 P. 879.

Various other authorities in harmony with the views stated in the opinions cited are collected in the annotation at 121 A.L.R. 31, et seq.

Petitioner directs our attention to the provisions of section 418, O. S. 1931, 12 Okla. St. Ann. § 683, providing that a civil action may be dismissed before the final submission of the case to the jury, but otherwise the decision must be upon the merits. The respondent contends that this statute is inapplicable in that we are here dealing with a special proceeding and not a civil action. Our attention is directed to the above-quoted language of section 11933, O. S. 1931, to the effect that the trial of the cause before the jury shall be "in the same manner as civil actions in the district court." A similar contention under practically identical statutory provisions was made in the case of Leonard v. Small, supra, in the motion for rehearing, and with reference thereto the court said:

"Appellee stresses, in his motion for rehearing, two statutes, to wit, article 3266, subd. 6, as follows: 'If either party be dissatisfied with the decision, such party may within ten days after the same has been filed with the county judge file his objection thereto in writing, setting forth the grounds of his objection, and thereupon the adverse party shall be cited and the cause shall be tried and determined *as in other civil causes in the county court.*' (Italics ours.)

"Also article 2182: 'At any time before the jury has retired, the plaintiff may take a nonsuit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief. When the case is tried by the judge, such nonsuit may be taken at any time before the decision is announced.'

"We are not prepared to hold that the expression in article 3266, that 'the cause shall be tried and determined as in other civil causes,' means more than that the general rules with reference to the trial of civil cases shall be followed, in view of the authorities cited on original hearing, and in view of the absence of authorities to the contrary, insofar as we have been able to find.

"In New Haven Water Company v. Russell, 86 Conn. 361, 85 A. 636, 638, it is said: 'But a "condemnation proceeding" is not a civil action, nor a civil process within the meaning of the statutes relating to civil process. It is a special proceeding to determine in a single action the damages done by the taking' — citing Lewis on Eminent Domain, and other authorities."

See, also, Todd v. Atchison, T. & S. F. Ry. Co., supra.

We find no provision in our statutes providing that title to the property shall become fixed upon payment into court of the award of the commissioners; therefore, the above cited authorities are applicable to this controversy and sustain the right of the condemnor to dismiss and abandon the proceeding after the verdict of the jury was returned and before the entry of final judgment on the verdict.

The writ is denied.

WELCH, C. J., CORN, V. C. J., and RILEY, BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur.