ROCK ISLAND IMPROVEMENT COMPANY, Plaintiff-Appellee,

v.

HELMERICH & PAYNE, INCORPORATED, Defendant-Appellant Third Party Plaintiff,

v.

Sam SEXTON, Jr., Third Party Defendant.

No. 81–1080.

United States Court of Appeals, Tenth Circuit.

Jan. 21, 1983.

Rehearing Denied Feb. 23, 1983.

Certiorari Denied May 23, 1983.
See 103 S.Ct. 2121.

James R. Eagleton, Tulsa, Okl. (Marc F. Conley, Tulsa, Okl., with him on the briefs), of Eagleton, Eagleton & Owens, Tulsa, Okl., for defendant-appellant.

John R. Cain, Oklahoma City, Okl. (David L. Russell of Benefield & Russell, Oklahoma City, Okl., on the brief), for plaintiff-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

In this diversity case Helmerich & Payne, Inc. appeals a jury verdict in favor of Rock Island Improvement Company for breach of contract and appeals the trial court's denial of its motions for judgment notwithstanding the verdict and for a new trial or amendment of the judgment.

From 1968 to 1977 Helmerich & Payne leased two tracts of land in Oklahoma from Rock Island for coal mining purposes. These tracts are referred to as the "Rees-Heavener" and "Rees-Petros" mines. The lease contained a reclamation clause that stated: "Upon the abandonment or completion of any mining operation, or part thereof, including but not limited to any strip operation, the surface shall be restored as nearly as possible to its condition prior to said mining operation . . . ." Helmerich & Payne subleased the land to Sam Sexton, Jr., who used stripmining techniques to remove substantial amounts of coal. When the lease period ended, the tracts were left with two strip pits and were not otherwise reclaimed to Rock Island's satisfaction. Rock Island sued Helmerich & Payne for breach of the lease's reclamation provision, seeking damages equal to the amount nec-

essary to reclaim the land. Helmerich & Payne filed a third party complaint against Sexton, who agreed to pay any judgment won by Rock Island. The jury awarded Rock Island $375,000.

On appeal the issues may be classified under the following headings: (1) the applicable Oklahoma damages law, (2) the admissibility of testimony by Rock Island's experts, (3) the excessiveness of the damages, (4) the fairness of the trial, (5) the assessment of damages for land that the State of Oklahoma had condemned, and (6) the crediting against the judgment, as stipulated by the parties, of $50,000 that Sexton had forfeited to Oklahoma.

## I

Helmerich & Payne contends that the trial court improperly applied Oklahoma damages law. In instructing the jury on damages,[1] the trial court relied on *Peevyhouse v. Garland Coal & Mining Company,* 382 P.2d 109 (Okl.), *cert. denied,* 375 U.S. 906, 84 S.Ct. 196, 11 L.Ed.2d 145 (1963). In *Peevyhouse* the Oklahoma Supreme Court examined a coal mining lease requiring the lessee to reclaim any land it stripmined. At issue was whether the proper measure of damages for the lessee's failure to reclaim was the cost of performance ($29,000) or the diminution in the fair market value of the land ($300). The court held that the proper measure of damages was the reasonable cost of reclamation, unless the reclamation requirement was incidental to the lease's main purpose and the cost of reclamation would be grossly disproportionate to the diminution in the land's fair market value. In the latter case, the lessor's damages were limited to the diminution in value. *Id.* at 114.

In the instant case the trial court submitted the issue of the reclamation clause's importance to the jury. We have held that a trial court must submit this issue to the jury when the parties have introduced extrinsic evidence of their intent, *Hitchcock v. Peter Kiewit & Sons Co.,* 479 F.2d 1257 (10th Cir.1973); otherwise, the trial court should treat interpretation of the contract clause as a matter of law. *See Walker v. Telex Corp.,* 583 P.2d 482, 485 (Okl.1978). Neither Rock Island nor Helmerich & Payne introduced evidence establishing the parties' intent in including the restoration clause.[2] Therefore, the trial court should not have submitted interpretation of the contract to the jury.

Helmerich & Payne asserts the trial court should have held that the lease unambiguously focused upon coal mining as its main purpose and that reclamation was merely an incidental purpose. Furthermore, Helmerich & Payne argues that because the parties stipulated the diminution in value of the land was $6,797, and the evidence

---

1. The trial court instructed the jury as follows:
 "The measure of damages is the reasonable cost of performing the contract, or in this case, restoring the land to the same condition it was in before stripmining, unless you find:
 1. That the lease provision requiring restoration of Plaintiff's land to the same condition it was in before stripmining was merely incidental to the main purpose of the lease; and
 2. That the economic benefit to the Plaintiff by restoring the land would be grossly disproportionate to the cost of restoring the land.
 "Then, if you so find, the amount of damages to which Plaintiff is entitled is the reduced value of Plaintiff's land, that is, the difference between the present fair market value of the land as it is, and the present fair market value of the land restored to the same condition it was in before the stripmining."

2. Helmerich & Payne attempted to introduce a letter it had received from an agent of Rock Island's parent corporation one year before the lease became effective, as relating to the issue of Rock Island's understanding of the meaning of the reclamation clause. The trial court excluded the letter as not clearly relating to the contract in question and as being potentially confusing to the jury. Helmerich & Payne asserts that the trial court erred in excluding this letter as extrinsic evidence. Rulings regarding the admission of evidence fall within the trial court's discretion and will not be disturbed on appeal unless clearly erroneous. *Keen v. Detroit Diesel Allison,* 569 F.2d 547, 549 (10th Cir.1978). We have read the letter and have determined that the trial court did not abuse its discretion.

presented showed that restoring the land would cost $375,000, the court should have held the cost of reclamation was disproportionate to the diminution in land value. Thus, following *Peevyhouse,* the proper measure of damages would be diminution in market value, an amount the parties stipulated, and thus not a jury issue. Rock Island's response is that *Peevyhouse* no longer represents Oklahoma law on damages for breach of mining contracts because of subsequent developments in that state's policy toward reclamation.

At the time the parties in *Peevyhouse* entered into their lease, Oklahoma had no stated policy concerning land reclamation after mining operations. Thus, in *Peevyhouse* the court considered only the economic benefits to the parties of a situation the court termed "artificial," "unreasonable," and "unrealistic": that a property owner would agree to pay a great deal for "improvements" that would increase the property's value by only a small amount. The court was concerned that if the landowner did not spend the large amount to reclaim the land, he would receive a windfall by recovering the amount from the lessee. 382 P.2d at 112.

However, after the decision in *Peevyhouse* but before Rock Island leased the tracts to Helmerich & Payne, Oklahoma enacted the Open Cut Land Reclamation Act. 1967 Okla.Sess.Laws Ch. 186 (current version at Okla.Stat.Ann. tit 45, §§ 721–729). The Act stated in part:

"It is hereby declared to be the policy of this State to provide, after mining operations are completed, for the reclamation and conservation of land subjected to surface disturbance by open cut mining and thereby to preserve natural resources, to aid in the protection of wildlife and aquatic resources, to establish recreation-al, home and industrial sites, to protect and perpetuate the taxable value of property, and to protect and promote the health, safety and general welfare of the people of this State."

*Id.* at § 2 (current version at Okla.Stat. Ann. tit 45, § 722).

The statute declares today, as it did in 1967, that the operator of a strip mine has a duty to reclaim the land and that the state may contract for the work to be done if the operator defaults. The statute makes no exception for cases in which the expenditures for reclamation are disproportionate to the resulting increase in value of the land. To be sure the statute looks to the operator as the party responsible for reclamation, and limits the state's recovery to the amount of the bond it has required.[3] Nevertheless, there are many reasons a landowner in Rock Island's position would want a reclamation provision in the lease— to enhance its image in the community, to protect against possible tort liability for conditions on its premises, and to allay any fear that under the recently enacted law it might somehow be held responsible for defaults of the operator. There are reasons a lessee might readily accept such a provision—it already has a duty to reclaim under the state statute.

 We are convinced that the Oklahoma Supreme Court would no longer apply the rule it established in *Peevyhouse* in 1963 if it had the instant dispute before it. *Peevyhouse* was a 5–4 decision with a strong dissent.[4] More importantly, the public policy of the state has changed, as expressed in its statutes. Although we are bound by decisions of a state supreme court in diversity cases, we need not adhere to a decision if we think it no longer would be followed.

---

**3.** At the time of the Rock Island-Helmerich & Payne contract the maximum bond required was $50 per acre. Today there is no maximum; the bond must cover the estimated reclamation costs. Okla.Stat.Ann. tit. 45, § 728(B).

**4.** *Peevyhouse* has been cited in only two Oklahoma Supreme Court cases. In *Western Natural Gas Co. v. Cities Service Gas Co.,* 507 P.2d 1236, 1249 (Okl.), *cert. denied,* 409 U.S. 1052, 99 S.Ct. 559, 34 L.Ed.2d 506 (1972), it was held to be inapplicable to the facts before the court. In *State ex rel. Cartwright v. Dunbar,* 618 P.2d 900, 911 (Okl.1980), its supplemental opinion on rehearing was cited for an unrelated point of constitutional law.

"An accurate forecast of [a state's] law, as it would be expressed by its highest court, requires an examination of all relevant sources of that state's law in order to isolate those factors that would inform its decision .... It is important to note, however, that our prediction 'cannot be the product of a mere recitation of previously decided cases.' In determining state law, a federal tribunal should be careful to avoid the 'danger' of giving 'a state court decision a more binding effect than would a court of that state under similar circumstances.' Rather, relevant state precedents must be scrutinized with an eye toward the broad policies that informed those adjudications, and to the doctrinal trends which they evince."

*McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). *Accord Hood v. Dun & Bradstreet, Inc.,* 486 F.2d 25, 31 (5th Cir.1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974); *Warner v. Gregory,* 415 F.2d 1345, 1346 (7th Cir.1969), *cert. dismissed,* 397 U.S. 930, 90 S.Ct. 817, 25 L.Ed.2d 112 (1970); *Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832, 851 (2d Cir. 1967). When the parties negotiated the contract in question, they expressly included a reclamation clause and required the lessee to bear the cost of reclamation. Given the attention focused by Oklahoma on the importance of reclaiming stripmined lands, it is more logical to assume that the parties meant what they said, calculated their costs and benefits under the contract accordingly, and intended the provision to insure proper reclamation of the land, than it is to assume that they expected the reclamation clause to have no force.[5]

Even though the trial court should not have submitted the issue of the reclamation clause's importance to the jury, we need not

reverse. Because we hold that cost of performance is the proper measure of damages, and the jury used this measure in calculating damages, the court's error is harmless.

## II

■ The trial court denied Helmerich & Payne's motion to strike Rock Island's expert witness' testimony that the cost of restoring the land as nearly as possible to its original condition would be $375,000. Helmerich & Payne claims that the expert's testimony should have been disregarded because on cross-examination the expert inadequately disclosed the underlying facts for his opinion. *See* Fed.R.Evid. 705. Specifically, it complains that the expert did not know how many acres would be reclaimed under his estimate. Although the expert admitted he could only guess the number of acres to be reclaimed, he testified that he had measured the strip pits in feet to calculate his estimate and that when the pits were filled the spoils areas (hills of surface material that had been removed to gain access to the coal) would have been graded and leveled. Since the bulk of the expert's estimate concerned filling the pits, the total number of acres involved was a minor element in figuring the cost of reclamation. He testified that his reclamation estimate included filling in the pits, grading and leveling the spoils, and revegetating. The expert also testified about his prior experience in reclaiming mined lands. Based upon these disclosures, we cannot find that the trial court erred in denying the motion to strike.

■ Helmerich & Payne also maintains that the expert's estimate cannot support the verdict because it included work that was not required by the lease: filling the pit on the Rees-Heavener tract and grading

5. In *Peevyhouse* the court relied in part on Oklahoma damages statutes requiring that a party receive no more in damages than it would have gained by full performance. *See* 382 P.2d at 113 (citing Okla.Stat.Ann. tit 23, §§ 96, 97).

Helmerich & Payne contends that these statutes limit the amount of its damages. Because the anticipated cost of reclamation may have affected the contract price, these damages stat-

and leveling the Rees-Petros tract.[6] Helmerich & Payne asserts that the lease did not require filling the pit on the Rees-Heavener tract because Sexton had fulfilled Helmerich & Payne's duty to restore the surface by reclaiming another pit and spoils area on the same tract that had been left over from previous mining. Furthermore, Helmerich & Payne maintains that Sexton had already graded and leveled the Rees-Petros tract as nearly as possible to its prior condition.

In assessing damages the jury could properly consider Rock Island's expert's estimate, which included filling and grading the new pit on the Rees-Heavener tract and restoring the Rees-Petros tract. The lease stated, "[T]he surface shall be restored as nearly as possible to its condition prior to [the] mining operation." The extent and cost of restoration required by the lease was the heart of this litigation, and the lease arguably required the work Rock Island's expert included in his estimate. Although Helmerich & Payne had no duty under the lease to reclaim the previously mined area, nothing in the lease indicates that it could fulfill its duty to reclaim the surface area it disturbed on a tract by reclaiming a different part of the tract. Helmerich & Payne neither sought restitution for reclaiming the previously mined area nor submitted evidence of the cost of that reclamation. Similarly, the expert's opinion that $25,000 would pay for leveling and grading the Rees-Petros tract related to the parties' dispute over how much restoration that tract required.

### III

■ Helmerich & Payne contends that reasonable damages fall in the range of $40,000 to $65,000 for regrading the spoils area and that the $375,000 verdict, which included regrading and filling the strip pits,

was excessive. Helmerich & Payne argues that in these circumstances the court should have ordered a new trial. In reviewing a trial court's refusal to grant a motion for a new trial because of an excessive verdict, we apply the abuse of discretion standard. *Garrick v. City and County of Denver,* 652 F.2d 969, 971 (10th Cir.1981). We cannot say that the jury or trial court erred by interpreting the reclamation clause to include filling the pits. Furthermore, because testimony of Rock Island's expert witness supports the $375,000 verdict, the trial court did not abuse its discretion in denying the motion.

### IV

Helmerich & Payne raises a number of complaints concerning evidentiary rulings and instructions that it contends rendered the trial unfair. It claims that the court improperly instructed the jury on Helmerich & Payne's obligation to reclaim the land under the lease. The trial court instructed the jury that the lease required Helmerich & Payne to restore the surface of Rock Island's land "to the same condition it was in before the coal was strip mined." The lease required restoration of the surface "as nearly as possible to its condition prior to [the] mining operation." The pretrial order included as an issue for trial, "Is it reasonably possible to restore the surface of subject real property to the condition it was on April 8, 1968, and the cost thereof." Helmerich & Payne claims error in the instruction's omissions of the lease language "as nearly as possible" and of the pretrial language of a "reasonable" possibility of restoration. Helmerich & Payne concedes that restoration is possible, but asserts that it agreed to restore the land only as nearly as possible or as reasonably possible and that spending $375,000 to restore land whose value will thereby be increased by

---

utes do not preclude use of the cost-of-performance measure of damages.

**6.** Additionally, Helmerich & Payne asserts that the expert included this work in his estimate because of an erroneous interpretation of state law given him by the Oklahoma Deputy Chief

Mine Inspector. Because Rock Island sought recovery only for breach of the lease reclamation clause, the state law requirements are irrelevant here. We have read the expert's testimony and find that it is consistent with the scope of the lease reclamation clause.

less than $7,000 is not reasonably possible. Helmerich & Payne is merely rearguing the proper measure of damages, an issue we have already resolved against it.

Helmerich & Payne correctly argues that the trial court erred in instructing the jury on the diminution in value of the land by focusing on the land's value at the time the jury was deciding the issue, rather than on its value at the end of the lease term. However, the error was harmless because we have already determined that the cost of reclaiming the land was the proper measure of damages.

Helmerich & Payne also alleges that the trial court erred (1) in excluding extrinsic evidence of the reclamation clause's meaning, testimony concerning lease payments to Rock Island, land records whereby Rock Island acquired the land it leased to Helmerich & Payne, and evidence of the land's present condition; (2) in admitting the sublease reclamation provision and Sexton's applications to the Oklahoma Department of Mines for mining permits; (3) in instructing the jury on the Oklahoma reclamation statutes and on waiver and estoppel; and (4) in permitting certain testimony of witnesses and certain statements of counsel. Finally, Helmerich & Payne maintains that the errors collectively deprived it of a fair trial. After reading the record and considering Helmerich & Payne's contentions separately and collectively, we conclude that the trial was fair and that the trial court committed no error justifying reversal.

## V

Helmerich & Payne contends that the trial court should have granted its motion to amend the pretrial order to permit adding the issue whether Rock Island could recover damages for land condemned by Oklahoma. Helmerich & Payne sought to add this issue less than one month before trial. From the record it appears that Oklahoma filed an action on February 22, 1974 to condemn 13.35 acres of the land at issue in this lawsuit. By the time of trial the state apparently had not taken possession, although on May 1, 1974, the state

paid into court an amount covering assessed value and costs. The Helmerich & Payne attorney who signed the motion and supporting memorandum stated he had had no knowledge of the condemnation action before October 10, 1980. Sexton did not indicate whether he was aware of the condemnation, but he supported the motion, claiming Rock Island should not recover for damage to land it did not own. Rock Island opposed the motion asserting that the motion raised a new issue on the eve of trial, that both Helmerich & Payne and Sexton were aware of the condemnation proceedings and were involved in negotiations with the condemnor, and that the condemnation proceedings were irrelevant because they had never been completed, negotiations were ongoing, and Rock Island still held legal title to the land. The trial judge gave no reason for denying the motion to amend.

A pretrial order controls the subsequent course of the suit unless the trial court modifies it to prevent manifest injustice. *See Seneca Nursing Home v. Secretary of Social and Rehabilitation Services of Kansas,* 604 F.2d 1309, 1314 (10th Cir.1979); Fed.R.Civ.P. 16. Here the trial court's refusal to modify the pretrial order did not create manifest injustice. In *Epperson v. Johnson,* 190 Okl. 1, 119 P.2d 818 (1941), an Oklahoma condemnor filed condemnation proceedings and paid the commissioners' assessment into court. Applying constitutional and statutory provisions substantially similar to those applicable to the condemnation of the Rock Island property, the Oklahoma Supreme Court found that the condemnor did not take title to the property simply by paying the commissioners' award into court. 119 P.2d at 823; *accord Board of Commissioners v. Rayburn,* 192 Okl. 694, 138 P.2d 820, 822 (1943); *State ex rel. Department of Highways v. Waters,* 376 P.2d 288, 290–91 (Okl.1962); *Oklahoma Turnpike Authority v. Dye,* 208 Okl. 396, 256 P.2d 438, 441–42 (1953). In the case before us, Helmerich & Payne does not contend that the state took possession of the land. To the contrary, after the condemnation was filed, Helmerich & Payne subleased this

land, received royalties from the sublessee for mining coal on the land, and paid Rock Island royalties for coal. Accordingly, the trial judge did not prejudice Helmerich & Payne by denying its motion to amend the pretrial order.

## VI

Finally, Helmerich & Payne contends that the trial court erred in failing to amend the judgment to give credit for Sexton's forfeiture to Oklahoma of $50,000 in performance bonds. The parties stipulated at pretrial that Helmerich & Payne would be credited in this amount and reaffirmed the stipulation in the briefs on appeal and at oral argument. The trial court should have amended the judgment to reflect the stipulation.

Subject to the modification of $50,000 credited to Helmerich & Payne as stipulated by the parties, the judgment is AFFIRMED.