RIVERSIDE DRAINAGE DISTRICT v. BUCKNER ET AL.

[66 South. 784.]

1. JURY. *Right of trial by jury. Eminent domain proceedings. Exercise of power. Payment of compensation. Statutory and constitutional provisions. General Law. Special law. Constitution 1890, section 90. Laws 1914, chapter 270. Laws 1912, chapter 196.*

Section 1, of chapter 270, Laws 1914, authorizing drainage districts created thereunder to exercise a right of eminent domain in a manner different from that provided by chapter 43 of the Code 1906, does not violate Constitution 1890, section 31, guaranteeing that the right of trial by jury shall remain inviolate.

2. EMINENT DOMAIN. *Exercise of power. Payment of compensation.*

Laws 1914, chapter 270, does not violate section 17 of the Constitution, in that it does not require payment of the damage awarded, direct to the owner of the land, but permits it to be paid to the chancery clerk.

3. STATUTES. *General law. Special law. Constitution 1890, section 90.*

Constitution 1890, section 90, prohibiting laws conferring the power to exercise the right of eminent domain in any other manner than that prescribed by general law, means, not that one method only for the exercise of the right of eminent domain can be provided, and that this one method must be provided by one general law, but simply that no method for exercise of the right of eminent domain shall be provided, except by a general law. As many methods for the exercise of this right may be provided as the legislature may desire, provided only that each method is set forth in a general law, and hence Laws 1914, chapter 270, conferring the right of eminent domain on drainage districts and amending Laws 1912, chapter 196, section 20, which provides a method by which all drainage districts may come within the law, applies to all drainage districts, and is valid as a "general law," which, in the constitutional sense, applies to and operates uniformly on all members of any class of persons, places, or things requiring legislation, peculiar to itself in matters covered by the law, and not a "special law" which relates and applies to particular members of a class, either particularized by express terms of the statute or separated by any method of selection from the whole class to which a law may, but for. the limitation, be applicable.

APPEAL from the circuit court of Washington county. HON. F. E. EVERETT, Judge.

Petition for mandamus by Reason Buckner and others against the Riverside Drainage District. From a judgment granting relief as prayed for, defendant appeals.

The facts are fully stated in the opinion of the court.

*Percy & Percy* and *D. S. Strauss*, for appellant.

The first argument is that section 1 of chapter 270, of the Laws of 1914, is in violation of section 31 of the Constitution of Mississippi, which provides that the right of trial by jury shall remain inviolate. This argument might be ignored as one of the "unconsidered trifles" of partisan debate, did it not betray the speciousness of appellee's attack throughout. Appellees refer to, in support of their position, sections 311 and 312 of Laws on Eminent Domain, Second Addition, (Sections 509 and 510 of the Third Addition), but quote only from the latter section. The former section reads as follows: "Some constitutions provide that the compensation for property taken for public use shall be ascertained by a jury of twelve men, according to the course of the common law. Other constitutions provide that the compensation may be ascertained by commissioners, or by a jury of less than twelve men. In either case the express provision of the constitution removes any question as to the right to a common-law jury. In the absence of any express provision on the subject, the authorities almost uniformly hold that it is not a matter of constitutional right. The line of reasoning upon which these decisions are founded is that, before any of our constitutions were adopted, it had been the practice in America and England to ascertain the compensation to be paid for property taken for public use by other agencies than a common-law jury; that this practice was well known to the framers of the constitutions, and that presumably they did not intend, by any general language employed, to

abrogate a practice so universal and of such long stand-
ing and against which no complaint existed.''

Reference is also made to the case of *Levee Commis-
sioners* v. *Johnson,* 66 Miss. 248, but what that case has
to do with the question here presented, neither a reading
of the quotation made by them nor of the whole case,
has yet revealed.   One other authority is offered by ap-
pellees as follows:   ''In *Railroad Company* v. *Drake,*
60 Miss. 621, in that part of the opinion on page 626, it
would seem that the court concedes the right to trial by
jury in Eminent Domain proceedings.''   It was with a
happy aptness that counsel skipped page 625 of that
same opinion which unexpurgated, but underscored, we
herewith offer:

''The only question presented by the petition is as to
the appointment of three commissioners by the chancery
court, and if the provision for this is unconstitutional,
it must be either because the commissioners could not be
appointed at all, or could not be appointed by the chan-
cery court.   Objection to the designation of three com-
missioners, in the first instance, must rest on the assump-
tion that a jury should be appointed instead of commis-
sioners to make the valuation.   We do not consider this
objection valid.   Mill on Em. Dom., sec. 91, and cases
cited.''

The second new point raised by appellees' brief is that
chapter 270 of the Acts of 1914, is in conflict with section
17 of the Constitution of Mississippi, ''which provides,''
to quote counsel, ''that private property shall not be
taken or damaged for public use except upon due com-
pensation being first made to the owner or owners thereof
in the manner to be prescribed by law.''   This is a mis-
quotation from the constitution as section 17, provides
that compensation shall be made in ''a manner. to be pre-
scribed by law.''   The procedure under chapter 270 is
as follows:   The drainage commissioners of the county
appraises the damages which will result to the land-

owner from the taking of the right of way through his property; that appraisement is filed with the chancery clerk; on the filing of same the drainage district is not called on or allowed to pay the damages allowed by the commissioners, and have no right to go on the land of the landowner. Automatically their appraisements are referred to the chancellor, who, with or without objection from the landowner, must pass on the appraisement presented; when he has passed on the appraisement, confirming or changing same, the drainage district is then directed to pay to the chancery clerk the damage allowed by the chancellor. Only after that payment is made the drainage district, through its agents, may enter on the land of the landowner. Counsel contends that section 17 disallows the taking of private property for public use, until payment has been made or tendered to the owner. This is undoubtedly correct. But he goes further and contends that payment to the chancery clerk, under the circumstances outlined above, is neither a payment nor a tender of the damages to the owner. Counsel cites no authorities to sustain his contention. Chapter 270 of the Laws of 1914, would be clearer if it stated that the payment to the chancery clerk was for the owner. But that is an irresistible conclusion from the language and intent of the whole chapter; that is the only purpose for which payment could be made to him. If payment to the chancery clerk is not a payment first made to the owner or owners, then neither is a payment to the circuit clerk as directed by section 1868 of the Eminent Domain Chapter, such payment. True it is, that section 1868 directs payment to be made in that way only, in the event the landowner and his attorney are not present at the condemnation proceedings. But section 17 makes no exception for absentees, and to hold section 1868 valid—and it has never been questioned—it must be held that payment to the clerk is a tender to the landowner. If there may be a tender to the landowner

under the Eminent Domain Chapter, by payment to the circuit clerk, surely under this chapter there may be a tender to the landowner by payment to the chancery clerk. The danger referred to by counsel of a refusal by the clerk to pay the money, is as real in one case as it is in the other.

We might at this point call attention to the more ample protection afforded by chapter 270 to the landowner than that afforded by the Eminent Domain Chapter. Under the appraisement chapter no entry may be made until a decree by the last court hearing the evidence and payment of the amount is awarded by that court. Whereas, under the Eminent Domain Chapter payment of the award, made by the condemnation jury, immediately gives the condemning party the right to enter, although the landowner may appeal from the award of that jury and may on re-trial be awarded, in the circuit court, greater damages than the condemnation jury gave him. It will be noted unsecured by any appeal bond. If such procedure meets the requirements of section 17, we submit that the procedure under chapter 270 certainly does.

But not reason alone supports our position. Lewis on Eminent Domain, section 834 of the Third Addition, and 579 of the Second Addition.

The very matter under consideration was definitely presented and disposed of by the supreme court of Indiana in the case of *Consumers Gas Trust Company* v. *Harless,* 15 L. R. A. 505. Section 21 of the Constitution of Indiana provides: ''No man's property shall be taken by law without just compensation, nor except in case of the state, without just compensation, first assessed and tendered. That section is, we submit, identical in effect with section 17 of the Constitution of Mississippi. In that case the appellant had condemned under a statute similar to chapter 270. The appellees plead that payment had not been made or tendered to him, to which

appellant replied that payment had been made to the clerk of the court. The court, on page 508, spoke as follows: ''As to the second position assumed by the appellees, it is sufficient to say that the almost unbroken line of decision is that there is no valid objection to a statute like ours, which permits the condemning party to pay the assessed damages into court for the use of the landowner, and that such payment is equivalent to a tender, and confers a license to take possession even when an appeal is prosecuted. Lew. Am. Dom. 579; *Baltimore, O. & C. R. Co.* v. *Johnson,* 84 Ind. 420; *Lake Erie & W. R. Co.* v. *Kinsey,* 87 Ind. 514; Elliott, Roads & Streets, 185; *Riesner* v. *Atchinson Union Dept & R. Co.,* 27 Kan. 382; *Indiana O. L. Co.,* 5 West Rep. 537; *Norristown & T. Co.* v. *Burket,* 26 Ind. 53; *Pittsburg, Ft. W. & C. R. Co.* v. *Swinney,* 97 Ind. 586; *Terre Haute & L. R. Co.* v. *Crawford,* 100 Ind. 500.

That case, we submit, entirely covers the position taken by appellees in this case. More recently, that same case has been affirmed by a case which uses almost the exact language of chapter 270. *Cincinnati R. R. Co.* v. *Wabash R. R. Co.,* 70 N. E. 256.

*Campbell & Cashin,* for appellee.

We will go to what we consider the real point of contention in this case, to wit. That so much of section 1, chapter 270, of the Laws of 1914, as authorizes this drainage district to acquire title to private property for public use, by the appraisement proceedings therein provided for, is unconstitutional and void.

In the first place, we will say that it has been suggested by some lawyers and some judges that this Act is in violation of section 31 of the Constitution of Mississippi, which provides that the right of trial by jury shall remain inviolate. We will frankly say to the court that we do not concur in the opinion expressed by some, that the Act in question violates this section of the Con-

stitution. As to that, we will refer the court to sections 311 and 312 of Lewis on Eminent Domain, Pages 769 to 773, inclusive. *Railroad Company* v. *Drake,* 60 Miss. 621.

These are the only two cases in Mississippi, with which we are familiar, bearing upon this subject.

We are of the opinion that, in the absence of a constitutional provision requiring a trial by jury in eminent domain Cases, such is not necessary under the general constitutional provision that the right of trial by jury shall remain inviolate, but this question is submitted to the superior judgment of the court.

We do say, however, that, in our opinion, that part of section 1, chapter 270, Acts of 1914, which authorizes the commissioners of drainage districts, after the organization thereof, to take lands and then make appraisement of the value of any land so taken thereafter, is clearly in violation of that part of section 17 of the Constitution, which provides that private property shall not be taken or damaged for public use, except upon "due compensation being first made to the owner or owners thereof, in the manner to be prescribed by law." Said section of said Act is also violative of section 17 of the Constitution, in that it requires the payment of such amount as is fixed by the decree of the chancellor to be made to the chancery clerk, and does not require payment to be made or tendered to the owner or owners of the said land, as required by section 17 of the Constitution. *Pearson* v. *Johnson,* 54 Miss. 259, *Cage* v. *Trager,* 60 Miss. 563, and *Levee Comissioners* v. *Dancy,* 65 Miss. 335.

Payment to the chancery clerk of the amount of the due compensation fixed by the decree, even if we concede that payment is made to the chancery clerk for the benefit of the owners of the land, does not answer the constitutional guaranty of section 17, requiring compensation to be made to the owner or owners of the land. *Pearson* v. *Johnson,* 54 Miss. 259, *Thompson* v. *Grand Gulf R. R. and Banking Company,* 3 How. 240.

If the payment is made to the chancery clerk, and he should refuse to pay the money to the owner or owners unless they obtain an order from the chancery court or chancellor, directing said clerk to pay the money over, this would devolve on the owner, the duty of initiating proceedings for compensation for his property, as the condition of his obtaining it, which this court has said is not allowable. *Levee Commissioners* v. *Dancy, supra.* Again, we say that the method of obtaining private property for public use, prescribed by section 1, chapter 270 of the Laws of 1914, is in violation of paragraph "r" of section 90 of the Constitution, which provides that the legislature shall not pass local, private or special laws conferring the power to exercise the right of eminent domain in any other manner than that prescribed by the general law. *Lumber Company* v. *Railroad Company*, 89 Miss. 84.

The right to condemn and take private property is one thing, and the manner in which that right shall be exercised is quite another thing.

The right to condemn and take is dependent upon two things: First, a provision in the charter of appellant authorizing it, and, second, that the right will only be exercised for such purposes as the Constitution allows private property to be taken, to wit: for public purposes. Paragraph "r" of section 90 of the Constitution clearly presupposes the right to condemn and take in cases with which it is dealing, and it deals only with the manner or method of exercising that right, and provides that is shall not be exercised in any manner other than that prescribed by the general law.

The appellant attempts to prove, by an "argument of plain, English grammar," that paragraph "r" of section 90 only prohibits the legislature from conferring the right of eminent domain by local,. private or special law, but does not prohibit it from conferring the power to exercise that right in any manner different from that

provided by the general law, and attempts to prove this by the punctuation. Punctuation is of little importance and value in interpretations of constitutional or statutory provisions, as said by Judge VAN DE VENTER, then United States Circuit Judge, in *Chicago, etc, R. R. Co. v. Voelker*, 129 Fed. 522, 70 L. R. A. 264, 18 Dec. Digest, page 991. Title Statutes, sec. 200.

But, appellant says that, even if we are correct in this contention, section 1 of chapter 270 of the Acts of 1914, is not a special law, but is a general law, and, therefore, does not come in conflict with paragraph "r" of section 90 of the Constitution.

Appellant says that, while it is true this Act only applies to drainage districts created under the provisions of section 39 of the Code, it potentially applies to all drainage districts, because, every drainage district organized under the Crenshaw Law, chapter 195, Acts of 1912; the Owens Law, chapter 197, Acts of 1912, or the provisions of sections 371 to 391 of the Code, inclusive, may elect to come under, and be governed by the provisions of chapter 39 of the Code.

We do not think there is any provision for drainage districts organized under the provisions of sections 371 to 391 of the Code, inclusive, coming within the provisions of chapter 39 of the Code. It is true that it is provided in chapter 39 that any drainage district organized under the provisions of the Crenshaw Law. Chapter 195, Acts of 1912; Owens Law, or chapter 197, Acts of 1912, may elect to come within the provisions of chapter 39 of the Code, but this still would not make this law applicable to these other districts, unless they elected to come within the provisions of the Code chapter. And, besides, the Crenshaw Law and the Owens Law, both provide that any drainage district organized under any other law of the State may elect to come under and be governed by that law; and, surely, if a drainage district organized under the provisions of chapter 39 of

the Code should, after its organization, and before it acquired any rights of way, elect to come under and be governed by the provisions of the Crenshaw Law, or the Owens Law, the provisions of section 1, chapter 270 of the Acts of 1914, in reference to the acquisition of lands by appraisement proceedings, would not apply to them.

Again, appellant says that section 1 of chapter 270 of the Acts of 1914 is not a special law, because it is a drainage law, and the courts have held the drainage laws to be general laws, and not in violation of paragraph Q of section 90 of the Constitution.

The four different methods of organizing and operating drainage districts prescribed by our laws, may be all general laws, in so far as they relate to the organization and establishment of drainage districts; but, if a provision happens to be inserted in one of these laws, conferring a right to exercise the power of Eminent Domain in any manner different to that prescribed by the general law on that subject, that particular provision is a special law, and not a general law. The fact that a special provision in reference to the manner of exercising the right of eminent domain is contained in a drainage law, which the court says is a general law, does not keep that particular provision in reference to the manner of exercising the right of Eminent Domain from being a special law on that subject, where it applies to drainage districts only, and not to all of the same class to wit: the class having the right of eminent domain.

We say that section 1 of chapter 270 of the Acts of 1914 is a special law, conferring upon drainage districts, organized under the provisions of chapter 39 of the Code, the right to exercise the power of eminent domain in a manner different from that prescribed by general law. The manner of exercising the power of eminent domain has already been prescribed by general law enacted by the legislature, to wit: Chapter 43 of the Code of 1906, the very first section of which

provides that every person or corporation having the right to exercise the power of eminent domain shall exercise it in the manner provided for by that chapter, and not otherwise. Section 1 of chapter 270 of the Acts of 1914, does not attempt to repeal this provision of the Code expressly, and repeals by implication are not favored. Even if the Act applied to all drainage districts, and conferred upon all of them the right, to exercise the power of eminent domain in a manner different from that in which every other person or corporation, having the right to exercise it, is required to exercise it, then it would still be a special law, because it would not apply to all of a class, or all of the same class, to wit: a class of persons authorized to exercise the right of eminent domain.

If it applies to a particular kind of drainage districts, as it does, and not to all drainage districts, then it is a special law, because not applicable to all of a class, and not even applicable to all of a special class, and, in the language of department store advertisers, it is an "extra special law," of the most virile and vicious kind.

A general law is one that comprehends all, or the whole. It indicates legal authority extending to the whole of the particular subject. *Southern Express Company* v. *Tuscaloosa*, 31 So. 460; *Daily Leader* v. *Cameron*, 41 Pac. 635, 3rd Okla. 677; *Gay* v. *Thompson*, 46 Pac. 378, 14 Utah, 383.

In *Trenton Iron Company* v. *Yard*, 42 N. Y. Law, 13 Vroom, 367; and in *Van Riper* v. *Parsons*, 40 N. J. Law, 11 Vroom, 123, 29 Am. Reports, 210, it is said: "A general law is one framed in general terms, restricted to no locality, and operating equally upon all of a group of objects, which, having regard to the purpose of legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves."

We say that drainage districts are not distinguished by characteristics sufficiently marked and important to

make them a class by themselves insofar as the exercise of the right of eminent domain is concerned. There is no more reason why they should be permitted to exercise this right in the manner which they may consider more convenient and economical, than there is in allowing any other person or corporation, having the right to exercise it, to exercise it in such manner as they may consider most convenient and economical. But, even if this were not true then, as we have shown section 1 of chapter 270 of the Acts of 1914, does not apply to all drainage districts, but only to a special class of drainage districts, and, this being true, under any construction that may properly be placed upon this Act, it is a special, and not a general law.

It cannot be a general law, even as to drainage districts, when it included only one of a class of drainage districts, and excluded three others.

If drainage districts are distinguished by characteristics sufficiently marked and important to make them a class by themselves, which we deny, then it might be said that an Act giving them the right to exercise the power of eminent domain in a manner different from that in which every other person or corporation, having the right to exercise it, is required to do so would be a general and not a special law; but, certainly, when it excludes from its operation all drainage districts not organized under, or operating under chapter 39 of the Code, it is bound to be construed as a special and not as a general law.

*Bloxham* v. *Florida Cen. and P. R. Co.*, 35 Fla. 625, 17 So. 902. Laws are general, if they apply to a class, though the class may be very limited, or even where there is but one of a class, but a law must be general in its application and embrace all of a given class, and not be specific in its application to a particular person or thing. See *State* v. *Cooley*, 56 Minn. 540.

Most of the definitions and citations deciding whether particular Acts are general or special laws, may be found in 4 Words and Phrases, page 3065, *et seq*, and in 36 Cyc. page 985, *et seq*.

We respectfully submit that that part of section 1 of chapter 270 of the Acts of 1914, authorizing drainage districts operating under chapter 39 of the Code, to acquire private property for public use, by appraisement proceedings in the manner therein provided for, is clearly in violation of sections 17 and 90, paragraph "r," of the Constitution of Mississippi.

SMITH, C. J., delivered the opinion of the court.

Appellees filed their petition in the court below praying for the issuance of a writ of mandamus directing appellant to condemn, in accordance with the provisions of chapter 43 of the Code of 1906, certain lands alleged to be owned by them, and to have been taken possession of by appellant. Appellant demurred to this petition, and upon its demurrer being overruled, declined to plead further, whereupon a judgment was entered in accordance with the prayer of the petition.

Since section 1 of chapter 270 of the Laws of 1914, authorizes drainage districts created thereunder to exercise a right of eminent domain in a manner different from that provided by chapter 43 of the Code of 1906, this judgment must be reversed unless this provision of the first-named statute is void.

Appellees' first objection to this statute is that it violates section 31 of our Constitution, which provides that the right of trial by jury shall remain inviolate. This objection has been ruled against appellees, by *Railroad Co.* v. *Drake*, 60 Miss. 621, and *Aldridge* v. *Drainage District*, 64 South, 377.

The second objection is that it violates section 17 of the Constitution, in that it does not require payment of the damage awarded direct to the owner of the land,

but permits it to be paid to the chancery clerk. This objection has been ruled against appellees, and we think correctly, by *Consumers' Gas & Trust Co.* v. *Harless*, 131 Ind. 446, 29 N. E. 1062, 15 L. R. A. 505, and *Cincinnati R. Co.* v. *Wabash R. Co.*, 162 Ind. 303, 70 N. E. 256.

The third objection to this statute is that it violates paragraph "r" of section 90 of our Constitution, which provides that:

"The legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.: . . . (r) Conferring the power to exercise the right of eminent domain, or granting to any person, corporation, or association the right to lay down railroad tracks or street car tracks in any other manner than that prescribed by general law."

According to the contention of appellees, this paragraph of section 90, in so far as it relates to the matter here under consideration, should be read as follows: "Conferring the power to exercise the right of eminent domain in any other manner than that prescribed by general law." On the other hand, appellant's counsel contend that the words "in any other manner than that prescribed by law" do not qualify the words "conferring the power to exercise the right of eminent domain," but qualify only the words "granting to any person, corporation, or association the right to lay down railroad tracks or street car tracks," and that the paragraph should read, in so far as the matter here under consideration is concerned, as if written "conferring the power to exercise the right of eminent domain."

A majority of the court are of the opinion that appellant's contention is correct, but the writer hereof has reached no satisfactory conclusion relative thereto. All of us, however, agree that, even conceding for the sake of the argument that the paragraph should be read as contended by appellee, the same result, in so far as the

case at bar is concerned, will be reached. We will therefore, for the purposes of this discussion, so read the paragraph. As thus read, we think it means, not that one method only for the exercise of the right of eminent domain can be provided, and that this one method must be provided by one general law, but simply that no method for the exercise of the right of eminent domain shall be provided except by a general law. As many methods for the exercise of this right may be provided as the legislature may desire, provided only that each method is set forth in a general law. This has been the interpretation upon which the legislature has acted heretofore, as evidenced by sections 1854, 2826, 3280, and 4402 of the Code, and should not be departed from unless manifestly wrong. It follows therefore that, if the statute here under consideration is a ''general law'' within the meaning of that term as used in the Constitution, it is valid.

''A law is 'general' in the constitutional sense, which applies to and operates uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to itself in matters covered by the law; while a 'special law' is one which relates and applies to particular members of a class, either particularized by the express terms of the act or separated by any method of selection from the whole class to which the law might but for such limitation be applicable. *State* v. *Cooley,* 56 Minn. 540, 58 N. W. 150; 1 Sutherland, Stat. Constr. 196.''

''Hence, if the object of a law have characteristics so distinct as reasonably to form for the purpose legislated upon a class by itself, the law is general, notwithstanding it operates upon a single object only; for a law is not general because it operates upon every person in the state, but because every person that can be brought within its predicament becomes subject to its operation. *Budd* v. *Hancock,* 66 N. J. Law, 133, 48 Atl. 1023; 1 Sutherland, Stat. Constr. 196.''

"Legislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is, not wisdom, but good faith in the classification. *Seabolt* v. *Commissioners*, 187 Pa. 318, 41 Atl. 22; 1 Sutherland, Stat. Constr. 203."

By this statute all drainage districts are put into a class by themselves, and permitted to exercise the right of eminent domain in the manner therein provided. The object to be accomplished by the formation of drainage districts furnishes the basis for a real distinction between them and other corporations or bodies desiring to exercise the right of eminent domain, and therefore such a classification must be upheld by the courts, and a law which embraces within its terms all of such a class is a general and not a special law.

It is true that this statute only specifically confers power to exercise the right of eminent domain in the manner here under consideration upon drainage districts to be formed in accordance with its terms, but it is also true that this statute simply amends two of the sections of chapter 196 of the Laws of 1912, which last-named statute, section 20 thereof, provides a method by which all drainage districts may come under its provisions. This being true, we think that it can be said that the statute, in so far as the question here under consideration is concerned, applies to all drainage districts, and it will not be necessary for us to determine whether or not the statute would be valid had it restricted its eminent domain provisons to drainage districts created under it.

*Reversed and remanded.*