279 So.2d 636 (1973)
Edward M. LODEN et al.
v.
MISSISSIPPI PUBLIC SERVICE COMMISSION and Mantachie Natural Gas District.
No. 47512.
Supreme Court of Mississippi.
June 25, 1973.
*637 Watkins & Eager, Velia Ann Mayer, H.H. Whitworth, Jackson, for appellants.
Thomas, Price, Alston, Jones & Davis, Bennett E. Smith, Jackson, for appellees.
BROOM, Justice:
Edward M. Loden, et al., appellants, appeal from a decree of the Chancery Court of the First Judicial District of Hinds County, Mississippi. Said decree affirmed an order of Mississippi Public Service Commission (identified herein as the Commission) dated March 6, 1972. The order in question authorized Mantachie Natural *638 Gas District (identified herein as Mantachie) to revise its tariff so as to increase gas rates charged its prospective customers in order that Mantachie would be able to finance, construct and operate a natural gas system to serve prospective customers in its certificated area.
Mantachie was created by the State Legislature by passage of Mississippi General Laws Chapter 309 (1966). Said legislation made Mantachie a valid political subdivision of the state pursuant to Section 2 of said Chapter 309, supra. Section 3 thereof contains language indicating that the Legislature found and declared that to provide natural gas service to the residents of the designated areas, and to provide ways and means to accomplish said purpose was the object of the Legislature in creating Mantachie. Mantachie was granted, by section 5 of said act, power and authority to construct and acquire a natural gas transmission and distribution system, and to issue revenue bonds to finance construction of the same. Section 5 supra, granted to Mantachie:
All powers authorized by Chapter 494, Laws of Mississippi, 1950, as amended, except as otherwise provided in this act, to be exercised by municipalities of the State of Mississippi with respect to the construction and installation of natural gas transmission and distribution systems and the financing thereof... .
In January 1967 Mantachie petitioned the Commission for a certificate of convenience and necessity authorizing and permitting it to serve natural gas in the certificated area. The required notice was given but the appellants herein did not protest the application. After the appropriate hearing, the Commission on September 12, 1967 entered its order in usual form granting Mantachie the certificate sought by Mantachie. By proper order the Commission made jurisdictional and fact findings, and found that Mantachie was a political subdivision of the state.
On December 31, 1971 Mantachie applied for an adjustment and increase in its tariff schedule. Appellants' first protest or objection came on January 28, 1972 when they filed their protest and motion to intervene objecting to Mantachie's application. Mantachie's application for increase in rates was heard by the Commission on February 24, 1972. Expert testimony was introduced by Mantachie to the effect that the proposed increase in monthly rates will be reasonable in view of increases in wholesale gas rates and other cost increases related to inflationary pressures occurring since 1967. These economic factors included increases in costs of labor and material and also included increased cost in municipal financing. Two engineers gave expert testimony to the effect that the proposed project was feasible and that it could be financed and operated in competition with other natural gas systems. Testimony before the Commission revealed that the people of the area in question had no other source of natural gas and that should natural gas become available there, the people would be greatly benefited. Testimony also indicated that making natural gas available to the area would be attractive to industrial prospects.
Appellants made no offer of testimony at the hearing of the application for rate increases. At their request the case was continued and set down for special hearing on March 6, 1972, on which date appellants filed another motion for continuance which was overruled by the Commission. The matter was concluded on March 6, 1972, at which time appellants presented no witnesses and none of them offered to testify. An order was entered by the Commission authorizing the revised tariff, which order found that it had full jurisdiction, and that because "of the increases in gas, installation, maintenance and operating costs, it is necessary" that the increases requested be approved in order that the district may finance, construct and render gas service within the area.
*639 Appellants appealed the cause to the Chancery Court of the First Judicial District of Hinds County, Mississippi. Said court affirmed the order of the Commission and thus this appeal.

I.
Appellants assert that the act by which the Legislature created the Mantachie Natural Gas District is a local and private, or special law and is not a general law, and is, therefore, void because it violated Mississippi Constitution Article 4, section 90(r) (1890); moreover, that the grant of the original certificate of public convenience is void because the act creating the district is unconstitutional.
The precise question here is whether or not the act is void under Mississippi Constitution Article 4, section 90(r) (1890) which prohibits the granting of the right of eminent domain by "local, private or special laws" and which section provides that eminent domain rights may be granted only by "general laws."
Mantachie has a perimeter which extends into only parts of the counties of Itawamba and Lee. The rule is that a statute which applies only to a single county is not necessarily to be legally branded as a special or local law and thus unconstitutional. 82 C.J.S. Statutes § 155, page 262 (1953). In order to be a general law it is not required in all cases that a statute literally extend to all the people of the state in every geographical part thereof, but it may be constitutionally intended to operate within a limited territory or place. 82 C.J.S. Statutes § 162, pages 270-271 (1953); 50 Am.Jur. Statutes section 12, page 29 (1944). This Court held over a half century ago that a law is general not by reason of the fact that it may be operative upon every citizen of the state but "because every person that can be brought within its predicament becomes subject to its operation." Drainage Dist. v. Buckner, 108 Miss. 427, 66 So. 784 (1914). See Delta & Pine Land Co. v. Board of Supervisors, 228 So.2d 893 (Miss. 1969); Culley v. Pearl River Indus. Comm'n, 234 Miss. 788, 108 So.2d 390 (1959). It is to be noted that the act under attack states within itself that the objects and benefits created by the act are necessary for the residents of the district and "the necessity in the public interest of the state at large...."
Appellants correctly point out that the act confers upon Mantachie all powers authorized by Miss.Gen.Laws Chapter 494 (1950), as amended, which has been codified as Mississippi Code 1942 Annotated section 3519-08(e) (1956). They also point out that the last cited code section confers on a municipality the right of eminent domain in regard to the construction and installation of natural gas transmission and distribution systems. On this basis they state that Miss.Gen.Laws Chapter 309 (1966) creating Mantachie is unconstitutional because it attempts to give Mantachie the right of eminent domain and therefore is repugnant to section 90(r) of the constitution, supra.
The eminent domain rights of Mantachie are not established by the act creating Mantachie. Said act merely provides that Mantachie would have all powers authorized by Mississippi General Laws Chapter 494 (1950), codified as Mississippi Code 1942 Annotated section 3519-01 (1956), et seq. When a person by birth or naturalization becomes a citizen of this state, such person immediately becomes beneficiary to certain rights previously enjoyed by others. Similarly, when Mantachie became a legal entity, it became beneficiary to certain rights and powers previously provided by general legislation applicable to enumerated legal entities. The right of eminent domian is granted by general law to all municipalities, companies, public utility districts or natural gas districts (existing for certain enumerated purposes) by Mississippi Code 1942 Annotated section 2780 (1956), now codified as 2749-24 (Supp. 1972).
This Court has declared void legislation which was held to be indirect violation of the constitutional provision in Mississippi Constitution Article 4, section 90(q) (1890) *640 prohibiting local laws relating to "stock laws, watercourses and fences." Such cases (relied upon by appellants herein) are readily distinguishable from the case at bar because at the time such cases were decided there was no general statute in existence granting to drainage districts powers concerning or related to stock laws, water courses and fences. Crenshaw v. State, 101 Miss. 457, 58 So. 219 (1912); Belzoni Drainage Comm'n v. Winn, 98 Miss. 359, 53 So. 778 (1910). The case of Giles v. City of Biloxi, 237 Miss. 65, 112 So.2d 815 (1959), relied on by appellants is not controlling on the question under discussion. In that case the statute which we held void purported to authorize "the sale or lease of reclaimed submerged lands" and was clearly void under Mississippi Constitution Article 4, section 90(u) (1890). There we dealt with a statute, not general in nature, which sought to permit sale or lease of state lands to a private corporation. The statute authorized establishment of a Bridge and Park Commission by Biloxi and specifically empowered the Commission to exercise the power of eminent domain.
The Legislature has considerable discretion in questions such as that before us. Horack, Sutherland Statutory Constitution Vol. 2, § 2114, pp. 70-72 (3d Ed. 1943). Here, the Legislature included as a class certain residents within an area composed of parts of two counties. The classification was not arbitrary, unjust or capricious but, on the other hand was a reasonable classification made by the Legislature which we uphold as being constitutional. Delta & Pine Land Co. v. Board of Supervisors, supra; Carter v. Harrison County Election Comm'n, 183 So.2d 630 (Miss. 1966); Culley v. Pearl River Industrial Comm'n, supra.
We adhere here to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusion affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of the validity of a statute. If possible, courts should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity. Board of Education v. State Educational Finance Comm'n, 243 Miss. 782, 138 So.2d 912 (1962); State ex rel. Jordan, Dist. Attorney v. Gilmer Grocery Co., 156 Miss. 99, 125 So. 710 (1930). Careful and close scrutiny of this case reveals that the right of eminent domain was not granted Mantachie by "local, private, or special laws" within the purview of Mississippi Constitution Article 4, section 90(r) (1890). Said right (eminent domain) was granted to all pipeline companies, et cetera, within the state by general law. It follows that the legislation creating Mantachie is constitutional and valid.

II.
Appellants state that the certificate of public convenience and necessity granted Mantachie on September 12, 1967 has expired. This argument is based upon Rule 6B of the Utility Rules of Practice and Procedures of the Commission. Said Rule 6B provides as follows:
In the event any construction authorized by a certificate of convenience and necessity is not started within four (4) months of the scheduled starting date, (unless otherwise provided by the order granting the certificate) and showing promise of completion, the certificate shall thereby expire, unless the Commission has, for good cause shown, extended the time limitation.
The Commission order of September 12, 1967 contained no provision regarding construction time limitations. However, since construction was not begun within four months after September 12, 1967, appellants argue that the certificate has expired.
We hold that Rule 6B, supra, may not be applied as urged here since there is not stated a "scheduled starting date" in *641 the certificate of public convenience and necessity. In Rule 6B the phrase "unless otherwise provided by the order granting the certificate" refers to the time limitation imposed on occasions where the Commission sees fit to establish the time limitation. Where no time period is provided for by the Commission and no "scheduled starting date" is contained in the order of the Commission, Rule 6B, supra, is not applicable so as to cause the certificate involved in this case to expire and become invalid.
The case of Chicago Railway v. Commerce Commission, 336 Ill. 51, 167 N.E. 840 (1929) is cited by appellants as authority that the certificate under attack should have been held by the lower court "null and void." The Illinois case was governed by a state statute of limitation which provided that a similar certificate becomes null and void "unless exercised within a period of two years from the grant thereof." Neither party here has cited any similar Mississippi statute in this case and we hold that the Illinois case is not applicable.

III.
It is next contended by appellants that Mantachie failed to comply with Commission Rules 5E(e), 7A(3), 7A(7) and 7A(8), and that therefore the lower court erred in allowing the order of the Commission to remain in effect, granting certain rate increases. We find no merit in this proposition because the exhibits and data called for by said rules were not pertinent and appropriate since no bonds had been issued and Mantachie was not in operation. The rules themselves stated that the exhibits and data, such as financial statements, balance sheets, operating statements, et cetera, should be attached "as far as pertinent" and "when appropriate."

IV.
Next, we have before us the argument that the Commission erred in its three findings of fact contained in its order granting the rate increase and also erred in granting the requested rate increase. Upon the facts before us revealed by the record, we are unable to say that there was no substantial evidence to support the finding of the Commission that it was necessary to approve requested rate increases because of the increases in the costs of gas, installation, maintenance, and operation. Neither are we able to say from the facts before us that the increased rates are unjust and unreasonable. Having carefully reviewed the testimony of the three engineers, whose expert testimony appears in the record, we find, indeed, that the proposed rate increases were reasonable and justified by the increases of interest cost on debts and other increases related to maintenance, labor, operations and materials. The economic feasibility of the project was established by substantial evidence of two engineers who testified as to feasibility. This testimony was sufficient to support the findings of the Commission in this connection. We point out that not one of the appellants or protestors offered any testimony whatsoever to contradict the testimony of Mantachie and its experts.
As we have held many times, the findings of the Public Service Commission are prima facie correct and as a reviewing Court we will not substitute our judgment for the judgment of the Commission. We are legally bound to uphold that finding of the Commission because there is substantial evidence in the record supporting such findings and the ruling of the Commission is not capricious, arbitrary or manifestly against the evidence. I.C.R.R. v. Jackson Ready-Mix Concrete, 243 Miss. 72, 137 So.2d 542 (1962); Citizens of Stringer v. G.M. & O.R.R., 229 Miss. 1, 90 So.2d 25 (1956); West Bros., Inc. v. I.C.R.R., 222 Miss. 335, 75 So.2d 723 (1954); Cobb Bros. Constr. Co. v. G.M. & O.R.R., 213 Miss. 706, 57 So.2d 570 (1952).

V.
Finally, there is before us the argument that the Commission erred in overruling the motion of appellants for a continuance. *642 One continuance was granted appellants and then they stated that they were ready to proceed when the matter came on for hearing again. Their next request for continuance came after Mantachie put on its proof.
As to whether or not the refusal to grant a continuance is error, we have held in a number of cases that the granting of a continuance rests largely within the discretion of the Commission. Generally, we will not reverse a case for failure to grant a continuance unless the discretion was clearly abused. We find here that the Public Service Commission did not abuse its discretion or act arbitrarily in refusing appellants' request for a continuance on March 6, 1972.
We find no reversible error in the record and the decision appealed from is affirmed.
Affirmed.
GILLESPIE, P.J., and PATTERSON, SMITH and SUGG, JJ., concur.