**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 97-CA-00867-SCT**

*CITY OF GULFPORT*

*v.*

*ORANGE GROVE UTILITIES, INC.*

*AND HANCOCK BANK*

**ON MOTION FOR REHEARING**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/24/97 |
| TRIAL JUDGE: | HON. MICHAEL L. CARR, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANT: | GARY WHITE |
| | JAMES B. WRIGHT, JR. |
| ATTORNEY FOR APPELLEES: | J. ADRIAN SMITH |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART; AND REMANDED - 3/31/1999 |
| MOTION FOR REHEARING FILED: | 1/14/99 |
| MANDATE ISSUED: | 4/15/99 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted, the original opinion is withdrawn, and this opinion is substituted therefor.

**STATEMENT OF THE CASE**

¶2. The City of Gulfport filed an eminent domain action to condemn the water and sewage facilities and certificates of public convenience and necessity of Orange Grove Utilities on October 6, 1996. Orange Grove then filed a motion to dismiss. The trial court granted Orange Grove's motion to dismiss and held that the City of Gulfport was without authority to condemn any of the Orange Grove certificated areas or facilities lying beyond the City of Gulfport's corporate limits. The Court also held that the City of Gulfport

was first required to cancel Orange Grove Utilities' certificate of public convenience and necessity in order to acquire the certificated area within the city limits. The city submits that the ruling of the trial judge was erroneous and specifically assigns the following issues as error:

**I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT WATER AND SEWER UTILITIES ARE NOT EXCLUDED FROM THE CANCELLATION REQUIREMENTS OF MISS. CODE ANN. § § 77-3-17 & 77-3-21**.

**II. WHETHER THE TRIAL COURT ERRED IN HOLDING THE CITY WAS WITHOUT AUTHORITY TO CONDEMN ORANGE GROVE'S FACILITIES AND CERTIFICATES BEYOND THE CITY LIMITS.**

**III. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE CITY'S ACQUISITION OF A CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY IS A PREREQUISITE FOR CONDEMNATION OF ORANGE GROVE'S CERTIFICATE OUTSIDE THE CITY LIMITS.**

**IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING ORANGE GROVE TO OFFER EVIDENCE AND TESTIMONY ON ITS MOTION TO DISMISS OVER THE OBJECTION OF THE CITY.**

**V. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADVISE THE CITY THAT THE MOTION TO DISMISS WAS BEING CONVERTED TO A MOTION FOR SUMMARY JUDGMENT AND FAILING TO ALLOW THE CITY ADEQUATE TIME TO RESPOND.**

**VI. WHETHER THE TRIAL COURT ERRED IN GRANTING ORANGE GROVE'S MOTION TO DISMISS.**

## STATEMENT OF THE FACTS

¶3. In 1991, the Harrison County Chancery Court granted the annexation of a portion of land north of Interstate 10 to the City of Gulfport. The annexation brought a large part of the Orange Grove Utilities, Inc. certificated area within the City of Gulfport. The remaining Orange Grove area is within five miles of the city limits. Due to this annexation, the City of Gulfport filed an eminent domain action to condemn Orange Grove's water and sewage facilities and certificates of public convenience and necessity. Orange Grove is a private utility and has a certificate of public convenience and necessity from the Public Service Commission.

¶4. In the annexation proceeding, the Harrison County Chancery Court found that because of septic tanks in the area, "A potential health hazard exists within the PAA (proposed annexation area) which poses a threat to the health of the residents of both the PAA and the City." Orange Grove was not a party to the annexation and the utility claims there were no findings by the court which involved public necessity for the condemnation. Both parties agree that if the city were to acquire only a portion of the Orange Grove utility area, several residents in the area outside the corporate limits of Gulfport would be left without supply facilities or pumping stations. This would leave these citizens without water or sewer service. The city appeals from the Harrison County Chancery Court's decision to dismiss the condemnation proceedings.

**I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT WATER AND**

## SEWER UTILITIES ARE NOT EXCLUDED FROM THE CANCELLATION REQUIREMENTS OF MISS. CODE ANN. § § 77-3-17 & 77-3-21.

¶5. The trial court ruled :

> Section 77-3-17 requires the City of Gulfport to first cancel Orange Grove Utilities' certificate before seeking to take by eminent domain the Orange Grove Utilities, Inc. certificated area within the city limits.

The city contends this ruling was error and that according to the same statutes water and sewer are excluded from this requirement. Orange Grove submits that a reading of Miss. Code Ann. § 77-3-17 will make it clear that water and sewer are included in the cancellation requirement.

¶6. Section 77-3-17 states in pertinent part:

> Any municipality shall have the right to acquire by purchase, negotiation or condemnation the facilities of any utility that is now or may hereafter be located within the corporate limits of such municipality; provided, however, prior to any municipality exercising the right of eminent domain as provided herein, the commission shall determine that the certificate of public convenience and necessity granted to the utility pursuant to Section 77-3-13 for the service area wherein such facilities are located, shall be cancelled as provided in Section 77-3-21.

**Miss. Code Ann. § 77-3-17 (1991).**

¶7. Section 77-3-21 provides:

> Prior to any municipality exercising the power of eminent domain as provided in Section 77-3-17, the commission shall determine that the certificate of public convenience and necessity granted to the utility pursuant to Section 77-3-13 for the service area wherein such facilities are located, shall be cancelled as provided in this section. **Nothing in this paragraph shall be construed to include service for water and sewage.**

**Miss. Code Ann § 77-3-21 (Supp. 1998)**(emphasis added). From a plain reading, it is abundantly clear that contrary to Orange Grove's supposition, water and sewage utilities are excluded from the cancellation requirement.

¶8. Orange Grove opines that because the last sentence of § 77-3-21 was changed in 1992 to read "nothing in this paragraph" from its' earlier reading "nothing in this section," this must mean the paragraph is not applicable to § 77-3-17. However, § 77-3-17 specifically includes by reference the language in § 77-3-21. We fail to see how the change of the word "section" to "paragraph"affects interpretation. Orange Grove states, "The last sentence of Miss. Code Ann. § 77-3-21(Rev. 1991) is confusing and appears almost as an afterthought." This sentence has been reviewed by the legislature on at least two occasions; it was added in 1987 and the wording was changed in 1992. The last sentence is not an afterthought and must be interpreted along with the rest of the statute. Interpreted according to plain meaning, the cancellation requirement is not applicable to water and sewage utilities. The Public Service Commission shared this conclusion and issued an order in this case on November 17, 1997. The PSC found Miss. Code Ann. Section 77-3-21 specifically excludes water and sewer utilities. Therefore, the commission found the city is not required to cancel the certificate in issue for areas within the city limits and newly

annexed areas.

¶9. In addition to the construction argument, Orange Grove contends that if we interpret Sections 77-3-17 et. seq. to exclude water and sewage, the statutes are unconstitutional. When a party challenges the constitutionality of a Mississippi statute, we have held that party must prove unconstitutionality beyond a reasonable doubt. *Cities of Oxford, Carthage, Louisville, Starkville, and Tupelo v. Northeast Mississippi Elec. Power Ass'n*, 704 So.2d 59, 65 (Miss. 1997).

> We adhere here to the rule that one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusions affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of validity of a statute. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.

*Id.* (quoting *Loden v. Mississippi Pub. Serv. Comm'n*, 279 So.2d 636, 640 (Miss. 1973)).

¶10. Orange Grove submits a reading excluding water and sewage utilities constitutes a "willful deprivation of [Orange Grove's] valuable property rights without due process of law and would constitute an official policy of prejudicial favoritism by denial of equal protection of the laws of the Constitution of the State of Mississippi and the laws of the Constitution of the United States." Orange Grove argues there is no rational basis to protect other utilities in a condemnation suit and not provide the same protection to water and sewage utilities.

¶11. The city argues authority exists for the disproportionate treatment of water and sewer utilities. We have held that water and sewage are health hazards and should be treated differently from gas, electric, and communication utilities. *Hinds-Rankin Metropolitan Water & Sewer Ass'n v. Mississippi Pub. Serv. Comm'n*, 263 So.2d 546, 554 (Miss. 1972). We stated, "Discrimination is not illegal where there is between the classes some natural and substantial difference germane to the subject and purposes of the legislation." *Id.* at 553 (quoting 16A C.J.S. Constitutional Law § 490 at 249-251(1956)). The city contends this is a rational reason for the distinction drawn by the statute and submits the reason is exemplified in its situation.

¶12. The city cites the chancery court's findings in the prior annexation proceeding which noted a potential health hazard existing within the PAA (proposed annexation area). The chancery court found septic tanks in the Orange Grove area pose a threat to the health of residents in the city and the PAA. The city suggests other rational reasons for treating water and sewer utilities differently. For health and safety, the city submits the cancellation requirement should not apply to sewer utilities since municipalities have the power to connect citizens to a central sewer system while a private sewer company might not. Finally, the city is unable to provide fire protection without control of the water system. The city suggests this is a rational reason to treat water utilities differently with regard to the cancellation requirement.

¶13. We find the arguments of the city persuasive, and since any doubts should be resolved in favor of the state, the trial court's ruling was in error. According to a plain meaning interpretation of the statute, water and sewer utilities are excluded from the eminent domain cancellation requirement as prescribed by Miss. Code Ann. Sections 77-3-13 et. seq.

## II. WHETHER THE TRIAL COURT ERRED IN HOLDING THE CITY WAS WITHOUT AUTHORITY TO CONDEMN ORANGE GROVE'S FACILITIES AND CERTIFICATES BEYOND THE CITY LIMITS.

¶14. The city asserts that its power of eminent domain is derived from the general powers given municipalities in sections 21-27-23 et. seq. since water and sewer are excluded from the specific provisions set out in chapter 77 of the code. The city submits that since a municipality is authorized to service areas up to five miles beyond the city limits, it should be able to condemn facilities that are within five miles of the city limits. **Miss. Code Ann. § 21-27-39 (1990).**

¶15. To the contrary, Orange Grove asserts Sections 21-27-23 et. seq. convey no authority for a municipality to condemn property. If there is any authority, Orange Grove submits the more specific statutes set out in Chapter 77 include water and sewer utilities and control over these general statutes. Orange Grove asserts that interpretation of the statutes as the city suggests is absurd since the specific statutes would provide more protection for utility companies within the city limits than the general statutes would provide for utilities outside. Since the city's interest is much stronger within the city limits, Orange Grove asserts this is nonsensical.

¶16. A review of the legislative history has yielded no simple answers. There is a dearth of legislative history on this topic. The bill approving the amendments to these statutes was vetoed by Governor William A. Allain in 1987, and the bill was passed after both the house and senate voted to override. However, Gov. Allain's concerns centered around stripping municipalities of eminent domain rights by enacting new safeguards for private utilities. There was no reference to the exemption of water and sewer utilities in his comments to the Mississippi Senate nor were there any comments from the House or Senate members on the topic. *See* 1987 Mississippi Senate Journal, Vol I *Regular Session*, 1118**.** Orange Grove is incorrect. Section 21-27-23 does give municipalities the authority to condemn property necessary for creation and maintenance of public utilities. As the title of the section suggests, this part of the code gives municipalities the authority to acquire property in order to create, maintain, and operate public utility service. **Miss. Code Ann. § 21-27-23 (f) (Supp. 1998).**

¶17. If the property is acquired through eminent domain, this section requires the exercise be consistent with Sections 11-27-1 through 11-27-51. *Id.* In this regard, we have held, "municipal utility statutes are subordinate to contrary provisions of the 1956 Act if it is clear that the legislature so intended." *Cities of Oxford, Carthage, Louisville, Starkville & Tupelo,*704 So.2d at 69 (citing *Mississippi Pub. Serv. Comm'n v. City of Jackson*, 328 So.2d 656 (Miss. 1976)). The provisions of the 1956 Act include the Municipally Owned Utilities Act and the Municipal Electric Power Plant Law of 1936 (§ § 21-27-11, et. seq. and 77-5-401, et. seq.). *Cities of Oxford, Louisville, Starkville & Tupelo*, 704 So.2d at 69.

¶18. It was not the legislature's intent to subordinate the 1987 amendments (including sections 77-3-17 et. seq.) to the 1956 Act. It is clear and has been discussed supra that Section 77-3-21 exempted water and sewer utilities from the amendments requiring cancellation of the existing utility's certificate of public convenience and necessity; however, Section 77-3-17 provides:

> Any municipality shall have the right to acquire by purchase, negotiation or condemnation the facilities of any utility that is now or may hereafter be located **within the corporate limits** of such municipality.

**Miss. Code Ann. § 77-3-17(1991)**(emphasis added).

¶19. The fact that a part of this same statute excludes water and sewer utilities from the cancellation requirement does not mean the language of section 77-3-17 is subordinate to the 1956 Act. Therefore, this more specific statute controls over the general grant of authority found in Sections 21-27-11 et. seq. The plain meaning of this statute leaves no doubt that the city has no authority to condemn areas lying outside its corporate limits. The PSC agreed with this decision in its order in this case. It found:

> Mississippi Code Annotated, § 77-3-17, which provides that a municipality may have the right to a condemnation of facilities which are now or may hereafter be located within the corporate limits of a municipality refers to the time of enactment, and not that a municipality may condemn facilities outside the corporate limits prior to annexation of said area. Therefore, the Commission finds that the City does not have standing to bring an action for persons located outside the City's corporate limits.

There was no error in the lower court's finding that the City of Gulfport was without standing to bring a condemnation action for the area located outside its corporate limits. This assignment is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE CITY'S ACQUISITION OF A CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY IS A PREREQUISITE FOR CONDEMNATION OF ORANGE GROVE'S CERTIFICATE OUTSIDE THE CITY LIMITS.

¶20. Because we have already addressed the City's inability to condemn areas outside the city limits in the second assignment of error, this assignment is moot.

### IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING ORANGE GROVE TO OFFER EVIDENCE AND TESTIMONY ON ITS MOTION TO DISMISS OVER THE OBJECTION OF THE CITY.

### V. WHETHER THE TRIAL COURT ERRED IN FAILING TO ADVISE THE CITY THAT THE MOTION TO DISMISS WAS BEING CONVERTED TO A MOTION FOR SUMMARY JUDGMENT AND FAILING TO ALLOW THE CITY ADEQUATE TIME TO RESPOND.

### VI. WHETHER THE TRIAL COURT ERRED IN GRANTING ORANGE GROVE'S MOTION TO DISMISS.

¶21. This Court has ruled that when the trial court considers matters beyond the mere pleadings, a motion to dismiss is ordinarily converted to a motion for summary judgment. M.R.C.P. 56. These two motions are "interchangeable and readily convertible procedural vehicles." *Bias v. Bias*, 493 So.2d 342, 344 n.2 (Miss. 1986). When a trial judge converts a motion to dismiss to a motion for summary judgment by review of matters outside the pleadings, the judge must give the parties involved ten days notice. *Palmer v. Biloxi Reg'l Med. Ctr.*, 649 So.2d 179, 183 (Miss. 1994). To avoid prejudice, it is necessary to strictly enforce this rule and give the parties a chance to present material in opposition to the motion. *Id.* It is apparent that the original motion to dismiss was converted by the court into a motion for summary judgment and the city should have been allowed more time.

¶22. In this case, a witness was allowed to testify and bring a chart which she explained. Upon objection, the trial judge overruled counsel's request for additional time to prepare and present evidence consistent

with a motion for summary judgment. The court stated: "Well, you've got one hour. Give them the name of your witnesses, and where they are, and when he can get them in here, and I'll give him time to talk to them before they take the witness stand." Counsel again objected that he would not have time to find his witnesses. He stated opposing counsel should have filed an affidavit prior to the hearing. The court replied, "I feel like an hour is reasonable." The lower court erred in allowing Orange Grove to introduce testimony and evidence outside the pleadings in a motion to dismiss or in the alternative failing to give notice to opposing counsel of the decision to treat the motion as one for summary judgment. Due to this error and our discussion in assignments I and II, this matter is remanded to the trial court for consistent proceedings.

## CONCLUSION

¶23. The trial court erred in its decision that water and sewer utilities are subject to the cancellation requirements of Section 77-3-21. In addition, errors were committed in granting the Motion to Dismiss. Therefore, the judgment below is affirmed in part and reversed in part, and this cause is remanded for proceedings consistent with this opinion.

¶24. **AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH AND WALLER, JJ., CONCUR.**